TRI-STATE AMUSEMENT COMPANY, Appellant, v. FOREST PARK HIGHLANDS AMUSEMENT COMPANY et al.

Division One, December 21, 1905.

1. FOREIGN CORPORATION: *Doing Business Without License:* Contracts: Breach: Subsequent License. A foreign corporation which has not paid the incorporation taxes required by the statute and been licensed to transact business in this State, cannot make a legal contract in this State to transact business in this State, and after the contract has been in part performed, then comply with the law governing foreign corporations and then maintain a suit for the breach of the contract. Such a contract is invalid, and the subsequent compliance with the law does not entitle the foreign company to maintain a suit for a breach thereof.

2. ———: ———: ———: **Void.** The statute which prohibits foreign corporations from doing business in this State without first complying with the law requiring the payment of incorporation taxes and obtaining a license, as effectively makes void a contract entered into by such foreign company as if the statute had in terms declared such a contract to be void. An unlawful act is itself void.

3. ———: ———: ———: **Subsequent License: Case Stated.** Plaintiff, a foreign corporation, entered into a contract in this State for the giving of theatrical exhibitions with the owner of amusement grounds, for fifteen weeks of each five years. After the contract had been performed for a few months, the owner of the grounds refused to permit plaintiff to longer use them. Thereafter plaintiff complied with the statutes requiring foreign corporations desiring to transact business in this State to pay the same incorporation taxes required of domestic corporations and secured a license as a resident foreign corporation, etc., and then instituted this suit, alleging a breach of the contract, and loss of profits due to the ouster. *Held,* that the contract was invalid, and plaintiff's petition, having alleged these facts, did not state a cause of action.

4. ———: ———: **Contracts Made in Other States: Comity.** This is the meaning of the statutes as to contracts entered into in this State for the transaction of business in this State. But contracts entered into by foreign corporations in the States of their domicile, with citizens of this State, if valid according to the laws of the State of their domicile and not prohibited by the laws of this State, are valid contracts, and will be enforced in this State as a matter of comity, and foreign corporations are not required to comply with the statutes in reference to paying incorporation taxes, etc., in order to maintain actions on such contracts.

Appeal from St. Louis City Circuit Court.—*Hon John A. Blevins,* Judge.

AFFIRMED.

*John D. Johnson* and *Virgil Rule* for appellant.

(1) Our laws prescribing conditions upon which foreign corporations are authorized to transact business in this State do not render contracts void, made by a non-complying corporation, under the terms of which

business is to be transacted in this State. R. S. 1899, secs. 1024-5-6; Chicago, etc., Co. v. Sims, 101 Mo. App. 578; Hogan v. City, 176 Mo. 149; Carson-Rand v. Stern, 129 Mo. 381; Ins. Co. v. Railroad, 149 Mo. 178; Columbus Co. v. Walsh, 18 Mo. 230; Clark v. Ins. Co., 19 Mo. 54; Fritts v. Palmer, 132 U. S. 282; Ins. Co. v. Rigers, 47 Pac. 848; Jarvis-Conklin v. Wilhoit, 48 Fed. 514; Utterly v. Mining Co., 4 Colo. 369; Kindell v. Beck, 19 Colo. 310; Pech. Mfg. Co. v. Graves, 6 S. Dak. 504; Ins. Co. v. Overholt, 4 Dill. 287; Am. Loan Co. v. Railroad, 37 Fed. 242; Rogers, etc., Co. v. Simmons, 155 Mass. 259; Behler v. Ins. Co., 68 Ind. 347; Ins. Co. v. Wellman, 69 Ind.. 413; Jarvis v. Willheit, 84 F. R. 516; Buffalo Zinc Co. v. Crump (Ark.), 69 S. W. 575; Chat. R. Co. v. Evans, 66 F. R. 809; Security Co. v. Elbert, 153 Ind. 198; State Mut. v. Brinkley, 61 Ark. 1; Dearborn v. Augustine, 5 Wash. 67; Whitman v. Strand, 8 Wash. 647; Edison Co. v. Railroad, 8 Wash. 370; North W. Mut. Co. v. Overholt, 4 Dill. 287; King v. Nat. Min. Co., 4 Mont. 1; Garfield v. Hammer, 6 Mont. 53; Washburn Mill Co. v. Bartlett, 3 N. D. 138; People v. Hawkins, 106 Mich. 479; American Co. v. East Co., 37 F. R. 242; Wright v. Lee, 2 S. D. 596; Ganser v. Ins. Co., 34 Minn. 372; The Manistee, 5 Biss. 381; Pennypacker v. Capital Co., 80 Ia. 56; Phoenix Co. v. Penn. Co., 33 N. E. 970; Toledo Co. v. Thomas, 33 West Va. 566; Germania Co. v. Curran, 8 Kan. 1; Rockford Co. v. Rogers, 47 Pac. 848; 5 Thompson, Corp., sec. 757. (2) Compliance with the law subsequent to the date of a contract gives the company a right of action; and this, too, when the law contains the provision that a non-complying corporation cannot maintain an action. Cases supra; Dearman Foundry Co. v. Augustine, 5 Wash.. 57; Huttig Mfg. Co. v. Hotel Co., 6 Wash. 122; Goddard v. Crefeld Mills, 21 C. C. A. 530; Simplex Dairy Co. v. Cole, 86 Fed. 739; Eastern B. & L. v. Bedford, 88 Fed. 7; Gas Pipe Co. v. Connell, 33 N. Y. Supp. 482; Toledo Tie Co. v. Thomas, 33 W. Va. 566; Wood Mowing Co.

v. Colwell, 54 Ind. 270; Sing. Co. v. Brown, 64 Ind. 548; Daly v. Ins. Co., 64 Ind. 1; Western Mills Co. v. Cooper, 34 Pac. 774; National v. Pursell, 92 Mass. 251.    (3) Respondents having contracted with appellants, are estopped from questioning appellants' legal capacity to transact business in the State.    La France Co. v. Mt. Vernon, 37 Pac. 287; Savings Co. v. Elbert, 153 Ind. 198; West. Land Co. v. Railroad, 161 Mo. 604; 4 Thomp. Corp., sec. 5275; 4 Am. and Eng. Ency. Law, 198-9, n. 1; 2 Morawetz, Corp., secs. 750-53; 1 Beach, Corp., sec. 13.

*E. C. Crow* and *Rassieur, Schnurmacher & Rassieur* for respondents.

A foreign corporation which is engaged in transacting business in this State, without having complied with our laws respecting foreign corporations, cannot enforce an executory contract growing out of such unlawful business.    The cause of action is void.    A subsequent compliance with our statutes will not legalize such a transaction.    McCanna v. Trust Co., 24 U. S. C. C. A. 11 and note p. 13; In re Comstock, 3 Sawy. 218; U. S. Rubber Co. v. Shoe Co., 132 Fed. 198; Heilman Brg. Co. v. Peimeisl, 85 Minn. 121; Ins. Co. v. Harvey, 11 Wis. 394; Assur. Co. v. Rosenthal, 55 Ill. 85; Hoffman v. Banks, 41 Ind. 1; Dudley v. Pinckard, 87 Ala. 431; Bank v. Page, 6 Ore. 431; Thorne v. Ins. Co., 80 Pa. St. 15; Lumber Co. v. Thomas, 92 Tenn. 587.    A contract entered into in violation of statute is void.    Downing v. Ringer, 7 Mo. 585; St. L. F. Assn. v. Carmody, 151 Mo. 573;; Live Stock Assn. v. Cass L. & C. Co., 138 Mo. 406; State ex rel. v. Dallas Co. Ct., 72 Mo. 331.    No estoppel can be urged against the other contracting party who refuses to perform while the illegal contract is still executory.    Wood v. Kansas City, 162 Mo. 311; Nichols v. Bank, 55 Mo. App. 81.

MARSHALL, J.—It is not altogether clear whether this action is intended as a proceeding in equity for an accounting and to recover the amount found to be due, or whether it is an action at law for damages; and it is not necessary to determine the character of the action, for the result must be the same whichever view be taken of the case.

The trial court sustained a demurrer to the petition, and the plaintiff appealed.

The material allegations of the petition are: that the plaintiff company is a corporation organized under the laws of the State of Illinois; that on the 5th of April, 1898, the defendant company had a leasehold interest in and to certain real estate situated in the city of St. Louis and lying just south of Forest Park, on which it maintained a pleasure resort, with pavilion, theater, stage and other buildings used for giving theatrical performances; that the stage faced the pavilion and the latter was surrounded by a railing, in which were more than one thousand seats for persons attending the performance, and which are hereafter referred to as reserved seats; that back of the reserved seats there was an open space for chairs for like purposes, but without being inclosed with a railing; that on the 5th of April, 1898, the plaintiff entered into a written contract with the defendant company and one John D. Hopkins, by which the defendant company agreed to furnish to the plaintiff the pavilion, theater and reserved seats for the purpose of giving theatrical performances therein, beginning on the 2nd of May, 1898, and expiring fifteen weeks thereafter, the performances to be daily performances, with Wednesday, Saturday and Sunday matinees; that the plaintiff was to furnish the performances, do certain advertising, and to receive the twenty-five cents per person paid for admission to the reserved seats, and one-half of the ten cents per person charged for admission to the unreserved seats; and, if the amount so received by plaintiff did not equal $1,200

per week, the defendant was to make up the deficit; that settlements on account of the twenty-five cents admission should be made each Tuesday, and the settlements for the one-half of the ten cent admissions were to be made daily; that the defendant Hopkins was to act as manager of the theatrical performances; and that the defendant company was to have the right to sell wines, liquors and other refreshments anywhere on the grounds, including the space set apart for reserved seats; that, pursuant to the contract, plaintiff company entered upon the performance thereof and gave theatrical performances at the times specified until or about the 10th of September, 1898, when the defendant company refused to allow the plaintiff company to further perform the conditions of the agreement, and has ever since so refused; that the defendant company knew, when it entered into the contract, that the agreement between plaintiff and said Hopkins was, that the plaintiff was to pay all the expenses incident to the contract on its part and be entitled to all the profits realized therefrom, and that thereafter, to-wit, on August 29, 1898, for a valuable consideration Hopkins sold and assigned to the plaintiff all of his interest in said contract. The petition then charges that the defendant company was guilty of a breach of its contract on the 10th of September, 1898, by refusing to allow the plaintiff to carry out the contract, and by entering into an agreement with the defendant Hopkins for the purpose of collusively and fraudulently ousting and excluding plaintiff from the premises, and preventing it thereafter from giving theatrical performances; and further agreed with Hopkins to give such performances itself under the directions and management of Hopkins. It is further stated that the plaintiff is unable to state the profits realized by the defendants from the performances given after the 10th of September, 1898; but it is averred on information and belief that the profits

amounted to $30,000, and that the plaintiff has been denied that sum.

The prayer of the petition is, that an accounting be taken and that plaintiff have judgment against the defendants for the damages so ascertained. The petition further alleges, that the contract was to last during the whole term of the lease that the defendant company had on the premises, which would expire on the fourth day of March, 1903. The suit was instituted on the 16th day of August, 1899. The petition further alleges, that on the 14th of April, 1899, it complied with the laws of this State governing foreign corporations, and was duly authorized by the laws of this State to do business in this State.

The defendants demurred to the petition on three grounds, to-wit:

1. Because the petition does not state facts sufficient to constitute a cause of action.

2. Because the petition does not state facts sufficient to entitle plaintiff to any equitable relief.

3. Because there is a defect of parties plaintiff, in this, that Hopkins was not made a plaintiff in the action.

I.

The decisive question in this case for determination is, as to the validity of the contract upon which the action is based.

The plaintiff is a non-resident corporation. At the date of the contract it had not complied with the laws of this State regulating the right of foreign corporations to do business in this State. It transacted business in this State under the contract from the 22nd of May until the 10th of September, 1898. During that time it never complied with the laws of this State relating to foreign corporations. Before the institution of this suit, to-wit, the 14th of April, 1899, the plaintiff complied with the laws of this State. The question,

therefore, is, whether such compliance before suit brought but after the contract was entered into and after the plaintiff had transacted all of the business under the contract until prevented from further doing so by the defendant, affects the validity of the contract as to the business done and to be done, or whether it only affects the remedy. The question under consideration must be determined upon a construction of the act of 1891 (Laws 1891, p. 75), now sections 1024, 1025 and 1026, Revised Statutes 1899.

Section 1024 provides, in substance, that every corporation for pecuniary profit formed in any other State, territory or country, "before it shall be authorized or permitted to transact business in this State, or to continue business therein if already established, shall have and maintain a public office or place in this State for the transaction of its business, where legal service may be obtained upon it, and where proper books shall be kept to enable such corporation to comply with the constitutional and statutory provisions governing such corporation; and such corporation shall be subjected to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers," etc.

Section 1025 provides that, "Every company incorporated for purposes of gain under the laws of any other state, territory or country, now or hereafter doing business within this State, shall file in the office of the Secretary of State a copy of its charter or articles of incorporation, or, in case such company is incorporated merely by a certificate, then a copy of its certificate of incorporation, duly certified and authenticated by the proper authority; and the principal officer or agent in Missouri of said corporation shall make and forward to the Secretary of State, with the articles or certificate above provided for, a statement duly sworn to of the proportion of the capital stock of the said corporation

which is represented by its property located and business transacted in this State, and the corporation shall pay into the treasury of this State upon the proportion of its capital stock represented by its property and business in Missouri, incorporating taxes and fees equal to those required of similar corporations formed within and under the laws of this State." It further provides that, "Upon compliance with the above provisions by said corporation, the Secretary of State shall give a certificate that said corporation has duly complied with the laws of this State, and is authorized to do business therein, stating the amount of its entire capital and of the proportion thereof which is represented in Missouri," etc. The section contains other provisions not necessary to be referred to here.

Section 1026 provides that, every such corporation for pecuniary profit, organized under the laws of another State, now doing business in or which may hereafter do business in this State, which shall neglect or fail to comply with the conditions of this law, shall be subject to a fine of not less than one thousand dollars, to be recovered before any court of competent jurisdiction, and it is made the duty of the Secretary of State to report such failure to the prosecuting attorney of the county, who is required to institute proceedings to recover the fine. The section further provides, "In addition to which penalty, on or after the going into effect of this act, no foreign corporation, as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of contract or tort: *Provided,* that the provisions of this section shall not apply to railroad companies which have heretofore built their lines of railway into or through this State; nor to 'drummers' or traveling salesmen soliciting business in this State for foreign corporations which are entirely non-resident."

Section 1027 exempts insurance companies from

the operation of this statute, for the reason, manifestly, that such companies are controlled and regulated by other provisions of the statutes.

These statutory provisions have undergone judicial determination in this State. In Williams v. Scullin, 59 Mo. App. 30, the St. Louis Court of Appeals, speaking through ROMBAUER, J., held that a contract made and to be performed in this State by a foreign corporation which had failed to comply with the act was invalid. The argument was made in that case that the statute was not intended to affect the validity of the contract, but only the remedy for the enforcement thereof, but the court refused to so construe the statute, and held that the statute struck at both the validity of the contract and the remedy for the enforcement thereof. The question came again before the St. Louis Court of Appeals in Steam Heating Company v. Gas Fixture Company, 60 Mo. App. 148, and that court, speaking through BRIGGS, J., again held that the statute affected both the contract and the remedy, and that the purpose of the statute was to prevent such foreign corporations from enjoying equal advantages of trade with domestic corporations without bearing any of the public burdens imposed on the latter. In that case the goods were ordered by mail from St. Louis, and shipped by the plaintiff from its place of business in New York, and it was held that the statute did not apply because the plaintiff had not become "permanently located in this State for the purpose of prosecuting its business."

The question came before the Kansas City Court of Appeals in Blevins v. Fairley, 71 Mo. App. 259, and that court, speaking through ELLISON, J., followed the decisions of the St. Louis Court of Appeals above referred to, and further held that a subsequent compliance by such corporations with the statute did not relate back and validate a transaction which was invalid when it took place. The goods in that case were ordered from a traveling salesman, and the corporation had not es-

tablished itself here as a "resident foreign corpora-
tion," and therefore the statute was held not to apply.

The question came before this court in Carson-
Rand Co. v. Stern, 129 Mo. 381. That was an action by
attachment upon notes executed by the defendant to the
plaintiff for goods sold and delivered. The opinion in
the case does not show whether the contract was enter-
ed into in this State or in a foreign State. Presuma-
bly, from what is stated in the opinion, the contract was
made in another State; and as no objection was made to
the validity of the contract under our statute, the con-
tract was a valid contract according to the laws of the
State in which it was made. No point was made, and,
therefore, no adjudication was had, as to the validity of
the contract. The only point urged and decided in that
case was whether or not a foreign corporation could
"maintain" an action in this State without having
complied with the laws of this State until after the act-
ion was instituted, but did so comply before the mo-
tion to dismiss the suit was filed. The question con-
sidered and adjudicated in that case was the effect and
meaning of the provision of section 1026, which, in ad-
dition to other penalties, provided that no such foreign
corporation "can maintain any suit or action, either
legal or equitable, in any of the courts of this State, up-
on any demand, whether arising out of contract or
tort." It was held that the word "maintain" meant,
literally, "to hold by the hand," and in its ordinary
use, "to uphold, to sustain, to keep up," while in plead-
ing the law dictionaries define it to mean, "to support
what has already been brought into existence;" and
under that construction it was held that the word
"maintain" as used in the statute was broad enough to
authorize a compliance with the statute after suit had
been instituted. The question of whether or not the
corporation had become permanently located in this
State was not raised or passed upon.

It is to be observed, however, that it was said in

that case that the paramount object of the statute was "to place foreign and domestic corporations on a footing of equality in the field of commerce."

The decision in that case has led to a diversity of ruling between the Kansas City and St. Louis Courts of Appeals. The Kansas City Court of Appeals, speaking through ELLISON, J., in Ehrhardt v. Robertson, 78 Mo. App. 404, held that the Carson-Rand case did not have the effect of overruling the prior adjudications of the Courts of Appeals in this State, which held that the act struck at both the validity of the contract and the right to maintain an action for the enforcement thereof, but that it simply construed the provision of section 1026 affecting the remedy and did not touch upon or decide the question of the validity of the contract under sections 1024 and 1026. The court further pointed out that ever since the decision of this court in Downing v. Ringer, 7 Mo. 586, the courts of this State had adhered to the doctrine laid down by all text-writers, that where an act is prohibited by statute it is void, although not declared in the statute to be void; that an unlawful act or a prohibited act is a void act, and that no rights could arise out of it. The court also pointed out that there was but one exception to that general rule of law to be found in the decisions of this court and that was in reference to revenue laws. [Ins. Co. v. Walsh, 18 Mo. 229.] The learned judge, who wrote the opinion in that case, cited the prior adjudications which held that a contract entered into by a foreign corporation that had not complied with our statutes was void; and cited cases from Pennsylvania, Alabama, Oregon, Tennessee, Illinois, and Wisconsin which so construed similar statutes of those States; and called attention to the fact that the courts of Massachusetts held to the contrary, because the statutes of that State provided expressly that such contracts should be valid and affected only the remedy. For the foregoing reasons, the Kansas City Court of Appeals held that the Carson-Rand case only

decided that an after-compliance with the statute would authorize the foreign company to maintain a suit, but that it did not decide that an after-compliance with the statute would relate back and make valid a contract which was prohibited by the statute.

On the other hand, the St. Louis Court of Appeals in the case of Chicago Mill & Lumber Co. v. Sims, 101 Mo. App. 569, speaking through GOODE, J., construed the Carson-Rand case as overruling the prior decisions of the two Courts of Appeals; and, upon .the faith of that construction, and of cases decided in other jurisdictions, notably Washington, West Virginia, Indiana, Massachusetts, Colorado, South Dakota and by the Federal courts, and from a consideration of the purposes and spirit of the statute itself, held that an after-compliance with the statute rendered the contract valid, as well as authorized the foreign corporation to maintain an action for the enforcement thereof. But one of the judges of that court deemed the opinion in that case to be in conflict with the decision of the Kansas City Court of Appeals in Ehrhardt v. Robertson, 78 Mo. App. 404; and, accordingly, that case was certified to this court and that case is now pending in this court.

It is proper at this stage to note that the statute under consideration came before this court for adjudication in Hogan v. St. Louis, 176 Mo. 149. That was a case wherein a resident taxpayer sought to enjoin the city from entering into a contract with a foreign corporation to light the city. The city had advertised for bids to do the work of lighting it. The foreign corporation had submitted a bid and a contract had been entered into but no business had been transacted in this State. The contention of the plaintiff was that before a foreign corporation could submit a bid or enter into a contract in such a case it was required to comply with the statutes, and that if it had not so complied when it submitted its bid and entered into the contract they were void. This court, speaking through VAL-

LIANT, J., drew a distinction between submitting a bid and entering into a contract, and transacting business in this State, saying: "Of course, a contract cannot be lawfully made to do an unlawful act, but a contract may be lawfully made to do an act which the contracting party can lawfully do only when he shall have complied with conditions or satisfied other demands, and his unconditional contract to do it carries with it the obligation to comply with those conditions or satisfy those demands; he assumes the risk of being able to do so. Therefore, when the Kern company entered into this contract, although it could not lawfully perform it without conforming to the conditions of the Missouri statutes, yet the contract carried by implication the obligation on the part of the company that it would conform to those conditions, and a neglect to do so, resulting in a failure to perform, would have been a breach of contract." It was further held that entering into a contract to transact business was, in the unlimited meaning of the term, "transacting business," but that such was not the meaning of the term "transacting business," used in the statute. Accordingly, it was held that the contract entered into by the city with the foreign corporation pursuant to the bid of that corporation, and under which no other business had been transacted by the foreign corporation, was not within the prohibition of the statute.

The consideration of the statute again came before the Kansas City Court of Appeals in Woolen Mills v. Edwards, 84 Mo. App. 448. There the plaintiff was a non-resident corporation and had sold goods to the defendant, the contract, so far as appears from the opinion, being made in the State in which the plaintiff was authorized to do business and therefore was a lawful contract under the laws of that State. The point in that case was as to the validity of the contract, and no point seems to have been made, and none was de-

cided, upon the question of remedy. It was contended by the defendant that the decision in Ehrhardt v. Robertson, 78 Mo. App. 404, controlled the case, but the Kansas City Court of Appeals, speaking through ELLISON, J., held that the Ehrhardt case was inapplicable to the case undergoing adjudication. And further held that the contract involved in that case was a valid contract under the laws of the State where the contract was made and was therefore valid under the laws of this State, and as no point was made as to the right to maintain the action, the judgment in favor of the plaintiff was affirmed.

The question came before this court, again, in Trower Bros. Co. v. Hamilton, 179 Mo. 205. In that case the contract was made and to be performed in Kansas. The money loaned was secured by a mortgage on cattle in this State. The suit was an action in replevin for the cattle, after condition broken. The plaintiff had never complied with the statute and the defense was that the contract was void. No question as to the right to maintain the action was raised by the pleadings. The contract was also charged to be usurious under the laws of Kansas. It was held that as the note and mortgage were "valid under the laws of the State where executed, there is no obstacle in the way of their enforcement under the laws of this State, unless it be because of plaintiff's failure to comply with sections 1025 and 1026, Revised Statutes 1899, before bringing suit, as section 3710, Revised Statutes 1899, has no application to such mortgages. But if it has, its effect is to invalidate a mortgage given as security to a Kansas contract, and it is as to such contract invalid under the fourteenth amendment to the Federal Constitution. [Allgeyer v. Louisiana, 165 U. S. 578; Bedford v. Loan Association, 181 U. S. 227.]" Thus it will be observed that the validity of the contract and not the right to maintain the action was the point decided in that case. But a foreign corporation that had never complied with

the laws of this State was permitted to invoke the aid of the courts of this State to enforce a contract that was valid according to the laws of the State of its domicile. It will be noted, however, that the corporation had not "permanently located" in this State nor become a "resident foreign corporation."

The foregoing is the state of prior adjudication in this State concerning the subject in hand. It will serve no useful purpose to analyze the decisions of sister States upon similar or somewhat similar statutes. Each of the Courts of Appeals has decided that the weight of authority in other States sustains their respective decisions. That there is a conflict of authority must be conceded; and it, therefore, remains for this court to construe the statutes in its own way. At the outset it will be observed that the decision of this court in Carson-Rand Co. v. Stern, 129 Mo. 381, did not decide the question here involved, nor did it in any manner discuss, much less decide, the effect of the statutes (secs. 1024 and 1025, R. S. 1899) upon the validity of contracts made and to be performed in this State by foreign corporations that had not, before entering upon the performance thereof, complied with the provisions of those statutes. Inferentially, such contracts were treated as void in Hogan v. St. Louis, 176 Mo. 149.

It is manifest from the language of the statute itself that it was the intention of the Legislature to place foreign corporations doing business in this State and deriving profit from business done in this State with citizens of this State, upon an equality with domestic corporations authorized by the laws of this State, and likewise to require such foreign corporations to bear the same burdens that domestic corporations have to bear. To accomplish this purpose, the statute (sec. 1024) prohibits any foreign corporation organized for pecuniary profit "to transact business in this State, or to continue business therein if already established" until it shall have established, and shall maintain, a public

office in this State where legal service may be had upon it, and where proper books shall be kept to enable such corporation to comply with the constitutional and statutory provisions governing such corporations, and makes such foreign corporations subject to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the laws of this State; and further provides that they shall have no other or greater powers than domestic corporations. And section 1025 further provides, that every such foreign corporation so organized, now or hereafter doing business within this State, shall file with the Secretary of State a copy of its articles or certificates of incorporation, with the sworn statement of its principal officer or agent in Missouri, showing the proportion of its capital stock which is represented by its property located and business transacted in this State, and requires such corporation to pay incorporation taxes and fees equal to those required of similar corporations formed within and under the laws of this State. In this way the lawmakers intended to make foreign corporations become locally incorporated in like manner and with like obligations and liabilities as are required of domestic corporations, and prohibits such foreign corporations from transacting business in this State until they have become so locally incorporated. Thus, the statute strikes at the validity of business transacted or contracts entered into in this State prior to the foreign corporation becoming locally incorporated. If the statute had stopped here, and made no other provision, or provided no other penalty, there would be no room for cavil that it was the intention of the Legislature to make contracts invalid that were entered into in this State by foreign corporations before complying with the statute, and such contracts would thus be void, and effective means of preventing foreign corporations from entering into such contracts with citizens of this State would have been afforded. But the

Legislature went further and by section 1026 provided, a penalty or a fine of $1,000 to be recovered by the State's officers from corporations that failed to comply with the act; and went further still and, in addition to the penalty, provided that no such corporation should be entitled to maintain any suit or action upon any demand, whether legal or equitable, where it had failed to comply with the statute.

Thus, it is clear that the statute strikes at not only the validity of the contract, but also the right of the company to do business in the State or maintain an action for the enforcement of a contract concerning business transacted in this State. The Carson-Rand case only goes to the effect of holding that an after-compliance with the statutes will enable such foreign corporation to maintain the action, but it does not hold that such after-compliance will relieve such corporation from the penalty or fine prescribed, nor does it hold that the contract itself is a valid contract. The two latter features were not passed upon or decided in that case. Some of the cases decided by the Courts of Appeals have drawn a distinction between such foreign corporations as have "permanently located" in this State or have become "resident foreign corporations," without complying with the laws, and foreign corporations that have made contracts in the State of their domicile with residents of this State, and where the foreign corporation simply seeks the aid of the courts of this State to enforce such contracts.

As to the contracts made by foreign corporations in the States of their domicile with citizens of this State, the contracts being valid according to the laws of the State where made, the *lex loci contractus* governs and will be enforced in this State as a matter of comity, unless the contract is prohibited by the laws of this State. In other words, such cases present the feature of a valid contract which one of the contracting parties qualifies himself to enforce in the courts of this State;

and, therefore, those cases relate to the remedy and not to the right or validity of the contract. Of course, in every case there must be not only a legal subject-matter but also a plaintiff competent to sue under the laws of this State. The Carson-Rand case falls within the principle here announced, and the case at bar falls within a similar principle as far as relates to the remedy, and under that principle there is in this case a competent party plaintiff under the laws of this State. But there is also present in this case the other feature which was not present in the Carson-Rand case, to-wit, the question of the validity of the contract or subject-matter of the suit. In this case the plaintiff entered into a contract and proceeded with the performance thereof for nearly four months, and seeks to recover for profits it would have earned under that contract for over four years thereafter if it had not been prevented from carrying out the contract by the act of the defendant. So far, therefore, as this case is concerned, the plaintiff has received the full benefits of its contract with a citizen of this State for four months without complying with any of the laws of this State relating to foreign corporations, and it now asks the aid of the court to enforce a contract that is executory and cannot be completed for four years after the suit was instituted. It has well been said that the purpose of the statute is to place foreign corporations upon an equality with domestic corporations and impose the same burdens upon them that domestic corporations have to bear, and to prevent foreign corporations from deriving benefits of business done with citizens of this State while bearing none of the burdens imposed upon like corporations organized under the laws of this State. To entitle domestic corporations to do business in this State they must first become incorporated and pay to the State the incorporating taxes and fees required by the statute. To place foreign corporations upon an equality with domestic corporations, they should be, and are, required,

also, to pay a similar amount to the State. Such foreign corporations in order to be placed upon such an equality must also put themselves in the same position that domestic corporations are required to be placed in with respect to the constitutional and statutory requirements of this State, among which is that there shall be some person in this State upon whom service can be had in the event they do not fulfill their contracts with residents of this State, if such residents desire to recover for a breach thereof.

It is too clear to admit of cavil that if foreign corporations are allowed to come into this State and do business with its people, derive all the benefits of such business, and fail to comply with the requirements of the statutes unless they need the aid of the courts to enforce the contracts against the citizens of the State, the door will be left wide open for them to do such business and never bear any of the burdens that domestic corporations have to bear, unless they need the aid of the courts, and that a construction of the statute which would enable foreign corporations to so do would not only fail to place such foreign corporations upon an equality with domestic corporations and enable them to avoid payment of the incorporating taxes and fees and thus defraud the State, but if the corporation broke the contract and the citizen sought to enforce it, the foreign corporation would not then comply with the laws of the State and the citizen would have to go to the domicile of the foreign corporation in order to sue it. It was to prevent the happening of such a contingency that the statute in question was, principally, enacted.

The statute prohibits foreign corporations from doing business in this State without first having complied with the law. Such a prohibition is as effective to make a contract entered into by such foreign corporation in this State void as if the statute had in terms declared such contracts to be void. The general rule of law is that where an act is prohibited or declared unlawful,

it is not necessary for the law to declare the act or contract void. An unlawful act is itself void. This has been the rule of law in this State ever since the decision of this court in Downing v. Ringer, 7 Mo. 586. That was an action upon a note given for the purchase of a town lot. The plat laws of this State provided, that if any person sell or offer for sale any lot before the map or plat of the town, village or addition be made out, acknowledged and recorded, such person shall forfeit a sum not exceeding three hundred dollars for every lot he shall sell or offer to sell. The question of the validity of the note was the point at issue in that case, and this court, speaking through NAPTON, J., said: ''It was formerly doubted in England, whether an agreement which merely inflicted a penalty for doing the act; but in Bartlett v. Vinor (Carth. 252; Chitty on Con., 230), Lord HOLT said, 'Every contract made for or about any matter or thing which is prohibited, and made unlawful by any statute, is a void contract, though the statute itself does not mention that it shall be so, but only inflict a penalty on the defaulter; because, a penalty implies a prohibition, though there are no prohibiting words in the statute.' This is the established modern doctrine, and the distinction between *mala prohibita* and *mala in se,* is discarded. [Chitty on Con., 232.] The cases in this country are uniform in declaring the principle, that if a note or other contract be made in consideration of an act forbidden by law, it is absolutely void, and the illegality of the contract will constitute a good defense at law, as well as equity. [2 Kent's Com., 466.] The penalty inflicted by the act concerning plats of towns and villages, implies a prohibition against the sale of lots before the requirements of the act are complied with, and the courts will not enforce a contract entered into against the spirit and policy of the statute.'' Accordingly, the note was declared absolutely void.

This case was expressly cited and followed in Ma-

son v. Pitt, 21 Mo. l. c. 393; State ex rel. v. Co. Court, 72 Mo. l. c. 331; Rollins v. McIntire, 87 Mo. l. c. 505; Live Stock Association v. Cattle Co., 138 Mo. l. c. 406 (in which it was further said, "The cases in this country are uniform in holding that a contract forbidden by statute is void, and the general rule is, that no action or suit can be maintained either at law or equity upon such a contract, even where the statute does not expressly declare them void"); and in St. Louis Fair Association v. Carmody, 151 Mo. l. c. 573 (in which it was said, "It makes no difference how fair the contract may be on its face, or how innocent in its own isolated terms, if it is designed to encourge an object forbidden by law, the courts will have nothing to do with it").

These considerations necessarily lead to the conclusion that foreign corporations doing business in this State must comply with the laws of this State, and that contracts entered into by such corporations, in this State, before complying with the laws of this State, are void and cannot be enforced in the courts of this State. Contracts entered into by foreign corporations in the States of their domicile, with citizens of this State, where valid according to the law of the State of their domicile and not prohibited by the laws of this State, are valid contracts and will be enforced in this State as a matter of comity, and such corporations are not required to comply with the statutes cited in order to maintain such actions. In other words, the statute was not intended to affect such cases, nor to change the rules of comity that have always been observed by the courts of the several States. The statute is leveled at and confined to foreign corporations that transact business in this State, and the asking the aid of the courts to enforce contracts that relate to legitimate business done in other States and that is not prohibited by the laws of this State, does not constitute doing or transacting business in this State within the meaning of the

statute. This conclusion is accentuated by the language of the statute itself, for section 1026, Revised Statutes 1899, exempts " 'drummers' or traveling salesmen soliciting business in this State for foreign corporations which are entirely non-resident.'' It would be a solecism to construe the statute so as to allow such contracts to be made in this State by ''drummers'' for corporations that had never complied with the statute, but to require them to comply with the statute if they had to ask the aid of the courts to enforce them.

The case of Trower Bros. Co. v. Hamilton, supra, comes within the rule of comity spoken of. And the case of Carson-Rand Co. v. Stern, supra, so far as the facts in judgment are shown by the opinion, also falls within the same rule. But the case at bar is very different, for here the foreign corporation was unquestionably transacting business in this State within the meaning of the statute. This is the only construction of the statute which will give full force to all the provisions of the statute, and it is likewise the only construction of the statute which will place such foreign corporations that do business in this State or make contracts in this State on an equality with domestic corporations, and which will enable the people of this State to secure the aid of the courts of this State when such foreign corporations are guilty of a breach of such contracts. These principles applied to the case at bar necessarily lead to the conclusion that the judgment of the circuit court is right, and it is, therefore, affirmed.

All concur, except *Brace, P. J.*, absent.