# UNITED SHOE MACHINERY COMPANY v.
# CHRISTIAN E. RAMLOSE, Appellant.

**Division Two, March 31, 1908.**

1. **FOREIGN CORPORATIONS: Doing Business in This State: Pleading.** It is not necessary for a foreign corporation, in order to maintain an action in this State arising out of transactions in this State, to allege in its petition, or to show, its compliance with our statutes relating to certificates to do business in this State. Non-compliance is a matter of defense, to be pleaded.

2. **REPLEVIN: No Affidavit: Amended Petition: Return of Property.** If the original petition in replevin was sworn to and afterwards was abandoned by the filing of an unverified petition, defendant is entitled to a return of the property to him; but if there was an affidavit on file at the time of the filing of the unverified amended petition, which was not a part of the original petition, then the filing of the amended petition did not operate as a withdrawal of that affidavit, and defendant was not at that time entitled to an order for the return of the property to him.

3. ———: ———: **Return of Property.** If the petition in replevin is not supported by affidavit, defendant's remedy is by motion for a return of the property which has been seized under the writ.

4. **FOREIGN CORPORATION: Compliance with State Laws: Burden.** The burden is upon the defendant to show that the plaintiff foreign corporation has not complied with the laws of this State permitting it to sue and do business in this State.

5. ———: **Assignment of Chose in Action: Right of Assignee to Sue: Contract Made in Another State: To be Performed Here.** The assignee of a chose in action, non-negotiable, such as a lease of personal property, occupies exactly the same position with respect thereto as his assignor; and if the contract is void in the hands of the assignor, it remains void in the hands of the assignee. So that if the lease of personal property to a citizen in this State by a New Jersey corporation, which had not complied with the laws of this State permitting it to do business here, was void, it remained void after it was assigned to a Maine corporation which had complied with the laws of this State. And where the lease contracts were entered into in Boston by and between a citizen of this State and a New Jersey corporation, which has never complied with the laws of this State in relation to foreign corporations, in that it has never

paid a capitalization tax or been licensed to do business here, although it had an agent here in charge of its place of business, the contracts were void and non-enforceable in this State in which they were to be.performed.

6. ——: ——: **Notice.** An assignee of a contract which on its face shows that it is to be performed in this State, is chargeable with notice of our statutes concerning foreign corporations doing business in this State, and that the contract is not enforceable if the assignor has not complied with the laws governing such corporations, and cannot be regarded as an innocent purchaser.

Appeal from Jefferson Circuit Court.—*Hon. E. M. Dearing,* Judge.

REVERSED AND REMANDED (*with directions*).

. *C. J. Anderson* and *Bond, Marshall & Bond* for appellant.

(1) The amended petition does not state facts sufficient to constitute a cause of action. The petition alleges that the plaintiff is a Maine corporation. It does not allege that it has complied with the laws of this State. A foreign corporation that has not complied with the laws of this State cannot maintain an action in this .State. Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; State ex inf. v. Standard Oil Co., 194 Mo. 124; Mill & Lumber Co. v. Sims, 197 Mo. 507; Wilson-Moline Buggy Co. v. Priebe, 100 S. W. 558; Roeder v. Robertson, 100 S. W. 1086. An averment of compliance is necessary. Compliance is a constitutive fact that must be pleaded before it can be proved. Pier v. Heinrichhoffen, 52 Mo. 336. (2) A foreign corporation cannot transact business in Missouri until it complies with the laws of this State, and contracts made by a non-complying corporation are void, and no action can be maintained on them. Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; Mill & Lumber Co. v. Sims, 197 Mo. 507; Wilson-Moline Buggy Co. v. Priebe, 100 S. W. 558; Roeder v.

Robertson, 100 S. W. 1086. (3) An assignee of a chose in action takes it subject to all equities, burdens and off-sets between the original parties. If it is void in the hands of the assignor it is void in the hands of the assignee. 2 Am. and Eng. Ency. Law (2 Ed.), 1080; Sumrall v. Ins. Co., 40 Mo. 27; Babb v. Taylor, 56 Mo. 311; Chouteau v. Allen, 70 Mo. 342; Ehrhardt v. Robertson, 78 Mo. App. 404; Williams v. Scullin, 59 Mo. App. 30; Miller v. Ammon, 145 U. S. 421; Diamond Glue Co. v. U. S. Glue Co., 147 U. S. 611; Dunaway v. Day, 163 Mo. 426; Bank v. Owens, 2 Pet. 527. (4) The plaintiff is not an assignee of the New Jersey Company, but simply its attorney in fact and sues only in its right. (5) The pretended assignment by the New Jersey Company to the plaintiff is a mere scheme to evade the laws of Missouri. (6) The contract was to be performed in St. Louis. It was, therefore, a Missouri contract. The *lex loci solutionus* governs. Diamond Glue Co. v. U. S. Glue Co., 187 U. S. 613; McCanna & Fraser Co. v. Surety Co., 76 Fed. 420; South Amboy Terra Cotta Co. v. Poerschke, 9 N. Y. Supp. 333; Delaware, etc., Const. Co. v. Railroad, 53 Atl. 533; 9 Cyc., 669, 674; Bank v. Earle, 13 Pet. 519. (7) The New Jersey Company was transacting business in Missouri. Cases cited under point 3, supra.

*Robert & Robert* for respondent.

(1) (a) The petition stated a cause of action. (b) It is not necessary to verify the petition in an action for replevin. All that is necessary in order to obtain possession of the goods sued for in such an action is to file a petition in the usual form, alleging that the goods are unlawfully detained, together with a bond and an affidavit in the language of the statute, the latter to be verified and filed when the petition is filed, or afterward. R. S. 1899, sec. 4463; Bank v.

Ragsdale, 158 Mo. 681; Schaeffer v. Faldwesch, 16 Mo. 337; Stone v. Barrett, 34 Mo. App. 15; Martin v. Block, 24 Mo. App. 60; Bosse v. Thomas, 3 Mo. App. 472. (c) No allegation that the cause of action accrued within one year is necessary in the petition. If that allegation is in the affidavit, the only effect is to prevent the defendant's giving a forthcoming bond, and in this case the defendant offered none. This does not affect the cause of action. R. S. 1899, sec. 4468; Guthrie v. Weaver, 1 Mo. App. 136. (2) (a) In a suit brought by a foreign corporation, it is not necessary to allege in the petition that the corporation is licensed to do business in this State. The burden of proving the non-license is upon the defendant. Ins. Co. v. Smith, 73 Mo. 368; Seay v. Sanders, 88 Mo. App. 486; State to use v. Hudson, 86 Mo. App. 513; Parlin & Orendorff v. Bank, 84 Mo. App. 72; Blevins v. Fairly, 71 Mo. App. 259; Shargin v. Cutler, 106 Ind. 242; Cassaday v. Ins. Co., 72 Ind. 95; Nichols v. Building Assn., 93 Va. 380; Mason v. Thompson Co., 94 Minn. 477; Coal Co. v. Gilmore, 93 Minn. 432; Langworthy v. Garding, 74 Minn. 325; Brown v. Investment Co., 102 S. W. 138; 6 Thompson, Corporations, sec. 7966. (b) Constitutive facts are those facts only which constitute plaintiff's cause of action, and do not relate to the capacity of the plaintiff to sue. Chemical Works v. Nemnich, 169 Mo. 397; Pier v. Heinrichhoffen, 52 Mo. 336; Wilbur v. Railroad, 110 Mo. App. 693. (c) Though the petition is silent on this feature, the plaintiff proved without this objection on the part of the defendant, that it had a license to do business in this State. (3) (a) The defendant in replevin must in his answer claim the goods and demand a return thereof, otherwise, the court cannot give a judgment in defendant's favor for the goods or the value thereof. R. S. 1899, sec. 4473; Young v. Glasscock, 79 Mo. 577; Pallen v. Bogy, 78 Mo. App. 98; Chemical Co. v. Nick-

els, 66 Mo. App. 689; Fowler v. Carr, 55 Mo. App. 145; Clinton v. Stovall, 45 Mo. App. 642. (b) The defendant confessed in his answer that certain of the machines sued for at the time the leases were made, were the property of the United Shoe Machinery Company of New Jersey; that the New Jersey Company sold, assigned and transferred these machines to the plaintiff; that he, the defendant, obtained possession of the said machines from the New Jersey Company, and charges in the answer that the documents by which he, the defendant, obtained possession of the said machines were void. He traced his title in the answer through, what he claims to be, void instruments, hence the defendant disclaims any title or right of possession in himself. (4) (a) The contract covering all the machines sued for in this case was made in Massachusetts. Hauck v. Sharpe, 83 Mo. App. 385; Brewing Co. v. Bobrecker, 79 Mo. App. 65; Kerwin v. Dorin, 29 Mo. App. 397; U. S. v. Telephone Co., 29 Fed. 17; Aultman Miller & Co. v. Holder, 68 Fed. 467; Tayloe v. Ins. Co., 9 How. 397; Mack v. Lee, 13 R. I. 293; Glass Co. v. Taylor, 34 S. W. 711; Jameson v. Gregory, 4 Metc. 363; Milliken v. Pratt, 125 Mass. 374; Dodd v. Bonafee, 6 La. Ann. 563; Ins. Co. v. Tuttle, 40 N. J. L. 476; Shelby Tube Co. v. Gun Co., 40 N. Y. Supp. 871; Galloway v. Ins. Co., 31 S. E. 969; 2 Parsons, Cont., sec. 582; Lawson on Cont., sec. 32; Wharton on Conf. Laws, secs. 406-421; 3 Am. and Eng. Ency. Law, 547; Bishop on Contr., sec. 1389. (b) The fact that the machinery involved in the contract was to be used in Missouri by the defendant, has no effect upon the validity of the contract. The validity is to be determined by the *lex loci contractus*, unless it is a contract which is opposed to the public policy of Missouri. Houghtaling v. Ball, 19 Mo. 84; Houck v. Sharpe, 83 Mo. App. 391; Blevins v. Fairly, 71 Mo. App. 259; U. S. v. Telephone Co., 29 Fed. 17; Henry v. Iron Works, 62 Pac.

904; Fitzsimmons v. Guanahain, 16 S. C. 192; In re Paige, 31 Minn. 136; Bishop on Contr., sec. 1382. (c) The validity of the contract is always determined by the *lex loci contractus.* Tri-State Co. v. Amusement Co., 192 Mo. 404; Long v. Long, 141 Mo. 352; Salee v. Chandler, 26 Mo. 124; Houghtaling v. Ball, 19 Mo. 84; Roach v. Foundry, 21 Mo. App. 118; State ex rel. v. Carroll, 6 Mo. App. 263. (d) It can hardly be said that a contract for the leasing of machinery on a royalty basis would be opposed to the public policy of Missouri. (e) Contracts made outside of the State of Missouri by corporations, if valid where made, will be enforced in this State even though the plaintiff is a corporation not licensed to do business in this State. Roeder v. Robertson, 100 S. W. 1086; Tri-State Co. v. Amusement Co., 192 Mo. 404; Blair v. Ins. Co., 10 Mo. 559; Blevins v. Fairly, 71 Mo. App. 259; Maxwell v. Edens, 65 Mo. App. 440; Heating Co. v. Fixture Co., 60 Mo. App. 148. (f) Mere solicitation of business and collection of money therefor is not doing business in this State, in the sense of the statute. Bank v. Leeper, 121 Mo. App. 688; Beard v. Publishing Co., 71 Ala. 60. (5) Even though the leases and the contract under which the defendant obtained possession of the machinery were void, the lessor retained the title to the property, and had a right to sell the same, and the lessor itself had the right to recover the possession of the same, through an action in replevin, in this State, although the lessor, a foreign corporation, did not have a license to do business in this State. Therefore, the assignee could recover. Roeder v. Robertson, 100 S. W. 1089. (6) The leases were not void, as being in restraint of trade. Ferry Co. v. Railroad, 73 Mo. 389; Peltz v. Eichele, 62 Mo. 171; Presbury v. Fisher, 18 Mo. 50; Skrainka v. Scharinghausen, 8 Mo. App. 522; Railroad v. Pullman Co., 139 U. S. 79; Olmsted v. Distilling Co., 77 Fed. 265; Goddard v. American Queen,

59 N. Y. Supp. 46; Matthews v. Associated Press, 15 N. Y. Supp. 887; Ferris v. Brewing Co., 155 Ind. 539; Wharton on Contr., sec. 421; 1 Parson on Contr., sec. 483; Story on Contr., sec. 285.

BURGESS, J.—This is an action in replevin, begun in the circuit court of the city of St. Louis on April 8, 1903, to recover certain shoe-making machinery. On application of the defendant the venue of the action was changed to St. Louis county, and thereafter, on application of the plaintiff, the venue was changed to Jefferson county. The trial resulted in a verdict and judgment for the plaintiff for the possession of all the machines specified in the petition, and the sum of one dollar damages, from which judgment, after ineffectual motions for new trial and in arrest, defendant appealed.

Plaintiff, in its amended petition, after alleging its incorporation under the laws of the State of Maine, states that on the 7th day of April, 1903, it was the owner of and lawfully entitled to the possession of certain goods and chattels to the value of $6,000, as follows: 2 Rapid Nailers, Nos. 1691 and 1750; 2 Prickers, Nos. 229 and 365; 1 Mayor Heeling Machine, No. 2814; 1 Rotary Trimmer, No. 420; 1 Grinder, No. 635; 1 Spring Heel Trimmer, No. 170; 2 National Heelers, Nos. 774 and 713; 2 Bussel Heel Trimmers, Nos. 702 and 194; 3 Knife Grinder Machines, Nos. 781, 1852 and 6142; 3 Consolidated Lasting Machines, Nos. 1033, 1101 and 1326; 1 Knurling Machine, No. 101; 2 Rapid Standard Screw Machines, Nos. 1536 and 1317; Taper Nail Tacking Machines: Double Head, Nos. 2055-6; Double Head, Nos. 2271-2; 2 Loose Nailers, Nos. 623 and 431; 1 Universal Double Clinch Machine, No. 225; 2 Grip Slugging Machines, Nos. 112 and 687.

That afterwards, on the same day, defendant wrongfully took said property from the possession of

plaintiff and still unlawfully and wrongfully detains the same, to its damage in the sum of one dollar; that said goods and chattels are in the possession of the defendant in the city of St. Louis, State of Missouri.

The petition concludes with prayer for judgment against defendant for the recovery of said goods and chattels, and one dollar damages for their taking and detention, and in case a delivery of the property cannot be had, then plaintiff prays judgment for six thousand dollars, the value thereof.

The answer to the petition denies that plaintiff is the owner or entitled to the possession of the property, or that defendant wrongfully took the property from plaintiff's possession or unjustly detains the same, or that plaintiff has been damaged. It then alleges that defendant is entitled to such possession, that the property is of the value of $6,000; that defendant has been damaged by reason of the taking of the property from his possession in the sum of $15,000; demands return of the property and asks for judgment for damages and costs.

The answer then pleads, affirmatively, that certain of the machines described in the petition, to-wit, Rapid Standard Screw Machines, Nos. 1536 and 1317; Loose Nailers, Nos. 623 and 431; Universal Sluggers, Nos. 117 and 500; Double Head, Nos. 2271-2, and Grip Slugging Machines, Nos. 112 and 687, were received, had and used by defendant under a certain contract or lease made and entered into, in the city of St. Louis, Missouri, between defendant and the United Shoe Machinery Company, of New Jersey, said contract or lease being numbered 564, dated August 24, 1900, and by which said company leased to defendant said machines for seventeen years from said date; that said lease required defendant, at his own expense, to keep the machines in good order and repair, and to obtain from the lessor, exclusively, all duplicate parts, extras,

devices and mechanisms needed in operating, repairing or renewing the machines, and also prohibited defendant from buying any material used by him, in connection with the machines, from any one except the lessor, and bound defendant to purchase all such materials from the lessor at prices fixed by it; that said contract was made with a view to prevent full and free competition in the purchase of such materials, and was and is against public policy, and void; that said lease also provided that if defendant had more work of the kind which could be performed by any of the machines belonging to the metallic department of the lessor than the capacity of the machines leased, the defendant would, under like agreement, lease such additional machinery from the lessor, and, failing so to do, then the lessor, if it so elected, might cancel the lease; that by reason thereof such contract or lease tended to lessen full and free competition in the sale of such articles or commodities, and prevented defendant from using any machines except those manufactured exclusively by the lessor, and was therefore unlawful and void.

Similar averments are made in the answer as to the several other leases entered into by the United Shoe Machinery Company of New Jersey, and defendant, for all the other machines mentioned in the petition.

The answer then concludes as follows:

"Defendant further states that the United Shoe Machinery Company of New Jersey is a corporation, organized and incorporated under the laws of the State of New Jersey, on the 7th day of February, 1899. That the total amount of the capital stock of said corporation is twenty-five million dollars, divided into one million shares, with a par value of twenty-five dollars each; that the objects of said corporation, among others, are to 'manufacture, buy, sell, lease, operate and deal in and with all kinds of machinery, tools and

implements, and mechanical devices and contrivances of every name and nature whatsoever, and especially to manufacture, buy, sell, lease, operate and deal in and with all sorts of boot and shoe machinery and every kind of mechanism, contrivance, implement, tool, material or thing in any way whatsoever connected with or useful in connection with the manufacture of boots, shoes and footwear. To purchase, acquire, erect, establish, hold and dispose of manufactories, work-shops, plants and buildings of every description, and to fully equip the same with a view of. carrying out the purposes herein set forth, or any of them; and to acquire the good will, rights, stock and property of all kinds, and to undertake the whole or any part of the assets and liabilities of any person, firm, association or corporation.'

"Defendant further states that at the time of executing the aforesaid contracts, leases and licenses, the said United Shoe Machinery Company of New Jersey was and is still a foreign corporation, incorporated, organized and existing under the laws of the State of New Jersey, by having a resident agent and place of business in the city of St. Louis, Missouri, and doing business in the State of Missouri through said agent; that said United Shoe Machinery Company of New Jersey is a corporation organized for pecuniary benefit, and as such has not complied with the laws of the State of Missouri relating to foreign corporations, in this: That said United Shoe Machinery Company of New Jersey has not filed with the Secretary of State of the State of Missouri a copy of its articles of association and charter granted by the said State of New Jersey, and has not procured from the Secretary of State a license to do business in the State of Missouri.

"And defendant further states that the contracts, leases or licenses by and through which defendant ob-

tained the above mentioned machines from the said United Shoe Machinery Company of New Jersey, as aforesaid, presented by the said resident agent of the United Shoe Machinery Company of New Jersey in the city of St. Louis, to defendant already filled out in the form in which they were to be executed, and in which they were executed, and were signed and executed in said city of St. Louis, by said defendant, in said form, in duplicate and then delivered by defendant to the said agent of the said United Shoe Machinery Company of New Jersey, in said city of St. Louis, Missouri; and the machines above mentioned, and mentioned in said contracts, leases or licenses were intended to be used by defendant in his business of manufacturing shoes in the said city of St. Louis.

"And defendant further states that the United Shoe Machinery Company of New Jersey not having complied with the laws of this State regulating foreign corporations, as aforesaid, and not having received a certificate or license from the Secretary of State authorizing it to do business in this State as aforesaid, it was and is unlawful for said corporation to transact business in this State without a compliance with the statute in such cases made and provided; and that the contracts, leases or licenses above mentioned are unlawful and void.

"And defendant further states that whatever title, or color of title, the United Shoe Machinery Company of Maine, the plaintiff herein, may have to the machinery or machines above mentioned, and mentioned in plaintiff's amended petition, has been derived by it through subrogation to the rights, if any, of the said United Shoe Machinery Company of New Jersey, either by assignment or otherwise, of their rights and interests, if any, under said contracts, leases and licenses; and the plaintiff has no other or greater rights under

said contracts, leases, or licenses, if any, than that acquired by subrogation to the rights, if any, of the said United Shoe Machinery Company of New Jersey.

"And, further answering, defendant says that the United Shoe Machinery Company of Maine, the plaintiff herein, is owned and controlled by the United Shoe Machinery Company of New Jersey, and that any sale, transfer or assignment of the machines or machinery mentioned and described in plaintiff's amended petition herein, or any part thereof by the said United Shoe Machinery Company of New Jersey to the plaintiff herein, is merely colorable, and made for the purpose of evading the laws of this State, which forbid foreign corporations to maintain any suit or action in any of the courts of this State, unless such foreign corporations comply with the laws of the State, in such case made and provided.

"And defendant states that by reason of the premises the plaintiff should not be permitted to maintain this action.

"And, further answering, defendant states that the machines mentioned in plaintiff's amended petition and described as National Heelers, Nos. 774 and 713, and Bussel Heel Trimmers, Nos. 702 and 194, were and are the absolute property of this defendant, and that plaintiff has no title or color of title thereto of any nature whatsoever."

The answer concludes with prayer for the return of the property mentioned in the petition, and for damages and costs.

Plaintiff, in its reply to the answer, admits that it derived its title to the machines mentioned in the answer by sale and assignment from the United Shoe Machinery Company of New Jersey to the plaintiff, but denies each and every other allegation of new matter contained therein.

It appears from the evidence that the United Shoe

Machinery Company of New Jersey was incorporated on the 7th day of February, 1899, with a capital stock of twenty-five million dollars, its principal office being in the city of Paterson, New Jersey. The company had never been licensed to do business in this State. The defendant, prior to leasing any machines from this company, had purchased some machines from other parties which he used in his business, to-wit, 2 rapid nailers, Nos. 1691 and 1750; 1 spring heel trimmer, No. 170; 2 national heelers, Nos. 774 and 713; 2 Bussell heel trimmers, Nos. 702 and 194. He leased other machines from said New Jersey Company upon an agreement to pay so much for each pair of shoes manufactured by him with the aid of said leased machines. A controversy arose as to the amount of royalty, if any, the defendant owed said company. On the 4th of September, 1900, the company wrote the defendant that it would lease him machines upon condition that "he resigned his equity in the heeling machines then in his possession" to said company, the company to release him from all claims for back royalties. According to the defendant's testimony said heeling machines were owned by him in his own right, but that he was then in such a position that he was compelled to agree to the proposition or quit business. Said company, accordingly, about December 18, 1900, and from time to time thereafter, leased certain machines to the defendant, including those he had formerly owned or claimed he owned. The leases contained various conditions, among which were: (1) That the machines should be used by him only in his factory in St. Louis; (2) that he should obtain from the lessor, at prices to be fixed by it, all parts necessary to keep the machines in repair, and also any additional machinery needed; (3) that he should pay all taxes levied on the machines; (4) that he should use the machines to their full capacity; (5) that he should pay the lessor

a royalty of one cent a pair for all shoes manufactured, with a rebate allowance of fifty per cent if the royalty was paid by the 15th of the succeeding month; (6) that the lessor should have the right to attach indicators to the machines to register the number of shoes manufactured, and that the lessee should keep accurate accounts of the number of shoes manufactured; (7) that if he ceased to use exclusively the machines leased to him by the company, it should have a right to take possession thereof; (8) that the lease should run seventeen years, but that the lessor should have the right to terminate it for any breach thereof or for any failure of the lessee to observe any one or more of the conditions of such lease or of any of the leases; (9) that a notice in writing sent through the mails should be sufficient to terminate such leases; (10) that the lessee acknowledged the validity of the lessor's patents; (11) that no act of the lessor should waive any of the terms of the lease, unless by instrument of writing signed by its president, vice-president or treasurer; (12) that the term "lessor" should include the company, its successors and assigns.

These leases were all signed and executed by the defendant in St. Louis, and were afterwards signed and executed by said New Jersey company in Boston, Massachusetts, and sent to the defendant in St. Louis.

It appears that plaintiff, the United Shoe Machinery Company of Maine, was formerly known as the Goodyear Shoe Machinery Company, the name having been changed February 25, 1902, such change of name being certified to the Secretary of State of this State on September 9, 1902. Thereafter it would seem that the officers of the United Shoe Machinery Company of New Jersey and those of the United Shoe Machinery Company of Maine (the plaintiff herein) were the same, and the place of business was the same, at 205 Lincoln street, Boston, as also at 1423 Olive street,

St. Louis, and the stock, property and assets of the two companies were kept at the same place. Kenney, the St. Louis agent of the "United Shoe Machinery Company," was not sure at the date of the trial which company he represented, but knew that there had been no change in his duties. He could not say which company paid him for his services, but that it was the "United Shoe Machinery Company."

On February 28, 1902, within three days after the name of the Maine company had been changed from the Goodyear Shoe Machinery Company to that of the United Shoe Machinery Company, the New Jersey company made an assignment of all its rights under the leases it had made to the defendant to plaintiff, the United Shoe Machinery Company of Maine, and appointed plaintiff its true and lawful attorney "in the name of the vendor or unto said vendee, or otherwise, to take any action at law or in equity, or otherwise" to enforce such rights, the consideration therefor being one dollar and other good and valuable considerations.    On the same day (February 28, 1902), the United Shoe Machinery Company of New Jersey, by a separate instrument, assigned and sold to the Maine company all of its leases, leased machines, stock, accounts, etc., in Alabama, Arkansas, Colorado, Illinois, Indian Territory, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Nebraska, North Dakota, Ohio, Oklahoma, South Dakota, Tennessee, Texas and Wisconsin, including cash on hand at its branch offices in Chicago, Cincinnati, St. Louis, and New Orleans; the consideration being that the Maine company would release the New Jersey company from liability on a certain bond it had given the Goodyear Shoe Machinery Company, dated September 22, 1900, to hold it harmless from all claims and demands against that company, and the further consideration that the Maine company would pay the

New Jersey company sixty per cent of the gross rentals and royalties collected by it. Neither the St. Louis agent of the two companies, nor the defendant, nor any manufacturer in St. Louis, so far as the evidence showed, knew of or saw either of these assignments prior to the trial of the case.

According to the testimony of several witnesses who had been for short periods of time in the employ of the defendant, the reports made from his factory to the New Jersey company as to the number of shoes made were incorrect, and that more shoes were manufactured with the aid of the leased machines than were reported by him. These reported to the company's agent in St. Louis and made affidavit as to the number of shoes made. After this had gone on for awhile, the defendant had a conversation with the agent in reference to the men he should employ, when, according to the defendant's testimony, the agent said "we couldn't employ men in our place that they didn't want." Defendant also applied to said agent for some supplies, and the agent said he could not have them until he received instructions from the company, and suggested that the defendant go to Boston to see the company. He went to Boston, and the manager of the company made an appointment for an interview with him at 4 o'clock, and when defendant appeared at the appointed time he was served with a summons in a suit; this being some time in 1902.

Several days prior to the institution of this suit, or about March 25, 1903, Kenney, the St. Louis agent for both companies, called on the defendant and demanded payment of alleged back royalties amounting, as he claimed, to about two thousand dollars. He refused to pay, and, according to Kenney's testimony, defendant told him to take the machines. Thereupon, at the same time, Kenney served upon the defendant a notice, signed by the United Shoe Machinery Com-

pany, dated at Boston, Massachusetts, March 25, 1903, cancelling all the leases to the defendant, and demanding that he deliver the machine to the United Shoe Machinery Company at its factory in Boston. No reason was stated in the notice for the cancellation of the leases. The defendant refused to give up the machines, and on April 8, 1903, plaintiff, the United Shoe Machinery Company of Maine, instituted this replevin suit against him. The sheriff seized all the machines in the defendant's factory, which were pointed out by Kenney, and turned them over to the plaintiff, and their whereabouts was unknown to plaintiff's agents, according to the testimony, at the date of the trial. Defendant, in his testimony, denied that false reports were made from his factory as to the number of shoes made, and several witnesses, in his behalf, testified that the capacity of the machines was much less than as stated by plaintiff's witnesses.

At the close of plaintiff's case, and again at the close of all the evidence, the defendant asked for an instruction in the nature of a demurrer to the evidence, which was refused by the court, and defendant saved exceptions.

While the petition in this case is in the usual form of petitions in actions of replevin instituted by citizens or corporations of this State, it shows upon its face that plaintiff is a nonresident corporation. Defendant insists that the petition does not state a cause of action for the reason that it does not allege that plaintiff corporation has complied with the laws of this State, or that the defendant got the machines from the plaintiff by a contract executed in or under the laws of any sister State, and that defendant's objection to the introduction of any evidence under the petition should have been sustained, as should also his motion in arrest of judgment.

Section 1024, Revised Statutes 1899, provides that

every corporation for pecuniary profit formed in any other State, Territory or country, "before it shall be authorized or permitted to transact business in this State, or to continue business therein if already established, shall have and maintain a public office or place in this State for the transaction of its business, where legal service may be obtained upon it, and where proper books shall be kept to enable such corporation to comply with the constitutional and statutory provisions governing such corporation; and such corporation shall be subjected to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the general laws of this State, and shall have no other or greater powers," etc.

Section 1026 provides that every such corporation for pecuniary profit, organized under the laws of another State, now doing business in or which may hereafter do business in this State, which shall neglect or fail to comply with the conditions of this law, shall be subject to a fine of not less than one thousand dollars, to be recovered before any court of competent jurisdiction, and it is made the duty of the Secretary of State to report such failure to the prosecuting attorney of the county, who is required to institute proceedings to recover the fine; "in addition to which penalty, on or after the going into effect of this act, no foreign corporation, as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of contract or tort: *Provided,* that the provisions of this section shall not apply to railroad companies which have heretofore built their lines of railway into or through this State; nor to 'drummers' or traveling salesmen soliciting business in this State for foreign corporations which are entirely non-resident."

It is plain from these sections of the statute that foreign corporations are prohibited from doing any business in this State without complying with their provisions, and they not only declare all contracts entered into in this State by foreign corporations, not complying therewith, void, but inhibit the institution of any suit thereon. That the Supreme Court has upon several occasions so interpreted these statutes is shown by the following adjudications: Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; State ex inf. Attorney-General v. Standard Oil Co., 194 Mo. 124; Mill & Lumber Co. v. Sims, 197 Mo. 507; First National Bank v. Leeper, 97 S. W. 636; Wilson-Moline Buggy Co. v. Priebe, 100 S. W. 558; Roeder v. Robertson, 202 Mo. 522.

As to defendant's said contention that the petition fails to state a cause of action in that it does not allege plaintiff's compliance with the laws of this State, it is held in Parlin & Orendorff Co. v. Boatman, 84 Mo. App. 67, that it is not necessary that a foreign corporation, in order to maintain an action in this State arising out of transactions in this State, allege in its petition or show its compliance with our statutes relating to certificates to do business in this State, and that non-compliance is a matter of defense to be pleaded in bar. The court said:

"The defendant objects that, since the plaintiff's petition discloses that it is a foreign corporation engaged in business in this State, it is fatally defective in failing to allege that it has complied with the requirements of the statute enabling it to do business in this State. It is a sufficient answer to this to say that it has been held by courts of the very highest respectability that in cases where the complaint of a foreign corporation is silent, as here, on the subject, it will be presumed on demurrer that it has complied with the requirements of the statute enabling it to do

business within the State. [Sprague v. Lumber Co., 106 Ind. 242; Nickels v. Building Ass'n, 93 Va. 380.] It is not incumbent upon a foreign corporation, in order to maintain an action brought by it, to show that it has complied with the statute and obtained a certificate of authority to do business. Non-compliance with the law is a matter of defense to be pleaded in bar."

That case was followed with approval in State to use v. Hudson, 86 Mo. App. 501, in which it was said: "And as to whether the defendant has complied with the provisions of sections 1025 and 1026, Revised Statutes 1899, it is sufficient to say that we are authorized to presume that it did."

Langworthy v. Garding, 74 Minn. 325, was an action to recover an assessment on a premium note by the receiver of a foreign corporation, and it was held that it was unnecessary for the plaintiff, as a part of his cause of action, to show that the corporation had complied with the statute of that State, and obtained a certificate of authority to transact business within its borders, and that non-compliance with the law in regard to foreign corporations was a matter of defense. The same rule is announced in Coal Co. v. Gilmore, 93 Minn. 432; Mason v. Thompson Co., 94 Minn. 472; Cassaday v. Ins. Co., 72 Ind. 95; Nickels v. Bldg. Assn., 93 Va. 380. All of these states have statutes governing foreign corporations similar to ours.

While we agree with defendant that all constitutive facts must be set forth in the petition in order to state a cause of action, we are of opinion that an averment of compliance with the law was unnecessary and was not a constitutive fact in the sense of our Code, but was matter of defense.

It is also contended by defendant that the petition is defective in that it does not allege that the

property sought to be replevied "has not been seized under any process, execution or attachment against the property of the plaintiff," nor "that the plaintiff will be in danger of losing his said property unless it be taken out of the possession of the defendant, or otherwise so secured," and that there is no affidavit to that effect by plaintiff such as is required by section 4463, Revised Statutes 1899.

While it is conceded by defendant that the action may be maintained without affidavit, it is contended that plaintiff will not be entitled to possession of the property until after judgment rendered in his favor, and that where delivered beforehand it will be ordered back into the possession of the defendant.

It is held in Eads, Admr., v. Stephens, 63 Mo. 90, that replevin may be maintained under the statutes of this State without any affidavit; but that in such case the plaintiff will not be entitled to the possession of the property till judgment has been rendered in his favor, and that where delivered beforehand, it may be ordered back into the defendant's possession; also, that the judgment will not be affected by reason of the omission. [Hamilton v. Clark, 25 Mo. App. 428; Bingham v. Morrow, 29 Mo. App. 448.]

If, as defendant insists, plaintiff's original petition was sworn to, and contained these necessary allegations, and under that petition the plaintiff obtained possession of the property, and thereafter filed an unverified amended petition, which did not contain these averments, and there was no affidavit on file, separate and apart from the petition, which accompanied the original petition containing these necessary averments, then the filing of the amended petition was a withdrawal or abandonment of the first, and defendant was entitled to an order for the return of the property to him; but if there was an affidavit on file at the time of the filing of the amended petition, which was not a

part of the original petition, then the filing of the amended petition did not operate as a withdrawal of that affidavit, and defendant was not at that time entitled to an order for the return of the property to him. In any event, even if we concede, which we do not, defendant's contention respecting the petition to be correct, his remedy was by motion for return of the property to him.

It is next contended by defendant that the court erred in overruling the demurrer to the evidence at the close of plaintiff's case, and again at the close of the whole case; the reasons assigned being that the rulings of the court in this respect were based upon three fundamentally erroneous theories: first, that in a suit by an admittedly foreign corporation, it will be presumed that such corporation has complied with laws of this State and been licensed to do business in this State until the contrary appears; second, that a contract made by foreign corporation, doing business without authority in this State, though void as to such corporation, is yet valid in the hands of an assignee of such corporation, where such assignee has been licensed to do business in this State; and, third, that if the leases were executed by the United Shoe Machinery Company in Boston, the company was not doing business in Missouri.

In addition to what we have already said upon the presumption of law that a foreign corporation doing business in this State has complied with the requirements of our statute, we hold that the courts of this country are presumptively open to all litigants, and that the general presumption of right acting applies to corporations, both domestic and foreign. Judge Thompson, in his Commentaries on the Law of Corporations, vol. 6, sec. 7965, says: "Judicial authority is likewise divided upon the question whether it is necessary, in an action by a foreign corporation to

enforce a contract made in the domestic State, to aver and prove compliance on its part with the statutes of the State entitling it to do business therein. . . . We have also met with cases which hold that it is a presumption, in the absence of evidence to the contrary, that a foreign corporation suing to enforce a contract made in the domestic jurisdiction, has complied with the local laws which entitle it to make that contract. If these principles are sound, then it must follow as a necessary conclusion to be adduced from them, that the foreign corporation need not aver and prove, in the first instance, in order to maintain an action upon a contract made within the domestic State, that it had complied with the domestic law entitling it to do business within the State, and to make that contract. But we find decisions directly to the contrary, which proceed upon the principle that compliance with the local statute is a condition precedent to the right to maintain an action in the local courts, which, like other conditions precedent, must be averred and proved by the plaintiff as the foundation of its right of action. These holdings are unphilosophical and contrary to the analogies of good pleading.''

While there is much conflict in the authorities, we conclude that the decided weight of authority is to the effect that the burden is upon the defendant to show non-compliance by the plaintiff corporation with the laws of the State in which it sues.

Another insistence by defendant is that although the New Jersey company had never complied with the laws of this State, and that the contract it had made with defendant was, therefore, void, the court held that the contract was valid in the hands of its assignee, the Maine company, which had complied with the laws of this State.

There is no question that the assignee of a chose in action, not negotiable, occupies exactly the same

position with respect thereto as his assignor, and if the contract is void in the hands of the assignor, it is also void in the hands of the assignee. "The general rule of law is, that a contract made in violation of a statute is void; and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract, he cannot recover. [Pollock's Principles of Contracts, pp. 253, 260; Penn v. Bornman, 102 Ill. 523; Alexander v. O'Donnell, 12 Kan. 608; Gunter v. Leckey, 30 Ala. 591; Kennedy v. Cochrane, 65 Me. 594; Bank of United States v. Owens, 2 Pet. 527, 539; Pangborn v. Westlake, 36 Iowa 546, 549; Harris v. Runnels, 12 How. 79, 84.] In Bank of United States v. Owens, this court said: 'There can be no civil right where there can be no legal remedy; and there can be no legal remedy for that which is itself illegal.'" [Miller v. Ammon, 145 U. S. l. c. 426.]

The evidence shows that the United Shoe Machinery Company of New Jersey is a corporation under the laws of that State, with a capital stock of twenty-five million dollars; that it was incorporated February 7, 1899, and does its general business from its office at 205 Lincoln street, in Boston, Massachusetts. This company, at the times of execution of the several leases, was engaged in the manufacture and leasing of machinery for making shoes. It has done business in Missouri ever since it was incorporated, and has always had an agent and place of business in the city of St. Louis, but has never complied with the laws of this State relating to foreign corporations, or paid a capitalization tax, or been licensed to do business in Missouri.

All of the leases in question were to run seventeen years, and the property covered by them was at the time of their execution in the city of St. Louis, where it was to remain and be used by defendant. So that, as appears from the express terms of these leases or con-

tracts, although signed in Massachusetts, they were executed with a view to their performance in Missouri. The leases all provide that the property covered by them, respectively, "shall at all times remain and be the sole and exclusive property of the lessor, and the lessee shall have no right of property therein, but only the right to use the same upon the conditions therein contained;" and it is only for conditions broken that the New Jersey company could recover the property during the life of the lease. It commenced doing business in St. Louis in the summer of 1899, and the evidence tends to show that it had and retained a resident agent there who looked after the leased machinery, the furnishing of new parts, the collection of royalties, etc., and that the company, at least up to the time of its said assignment to the Maine company, had continued to do business in this State by leasing machines to St. Louis manufacturers for use in St. Louis.

In Diamond Glue Co. v. United States Glue Co., 187 U. S. l. c. 613, it is said: "According to the undisputed testimony of the plaintiff's vice-president, who executed the contract, the instrument was signed in Wisconsin, and at all events, if it was executed with a view to the carrying on of business in that State by the plaintiff, the law of Wisconsin must be applied." [McCanna & Fraser Co. v. Surety Co., 76 Fed. 420; South Amboy Terra Cotta Co. v. Poerschke, 90 N. Y. Supp. 333; Delaware, etc., Const. Co. v. Railroad, 53 Atl. 533; 9 Cyc., 669 and 674; Bank v. Earle, 13 Pet. 519.]

Plaintiff insists that the contracts under which the defendant obtained possession of these machines from the New Jersey company were not void for any of the reasons set up in the answer, and that the machinery was leased to defendant in pursuance of a verbal agreement entered into in Boston, Massachu-

setts, by the United Shoe Machinery Company of New Jersey and the defendant, and afterwards confirmed by letter.

Though it be conceded that the contracts were entered into in Massachusetts, they were void and non-enforceable in this State, in which they were to be performed, the lessor not having complied with the statutes of this State, supra.

As the contracts under which plaintiff claims show upon their face that they are to be performed in Missouri, plaintiff must be charged with notice of our statutes concerning foreign corporations doing business in this State, and cannot for this reason, and for another heretofore indicated, be regarded as an innocent purchaser of said contracts.

Our conclusion is that the instruction asked by defendant at the close of all the evidence should have been given, and the instructions asked by plaintiff refused.

The judgment is reversed and the cause remanded to the circuit court, with directions to cause an issue to be framed as to what portion of said property belonged absolutely to defendant at the time of the seizure of the same under the writ of replevin, and the value thereof, also the value of his interest, if any, in the leased property; also as to the damages for the taking and detention of the same for the time such property was taken or detained from defendant until the day of the trial, and if the plaintiff have not the said property in possession, then to render judgment against the plaintiff and its sureties for the value thereof, or the value of defendant's interest therein, and for damages so assessed for the detention thereof and for costs; or, if the plaintiff have possession of the property, proceed in accordance with the provisions of sections 4473, 4474, Revised Statutes 1899.

All concur.