M. A. KELLY BROOM COMPANY, Respondent, v. MISSOURI FIDELITY AND CASUALTY COMPANY, Appellant.

Kansas City Court of Appeals, January 29, 1917.

1. PRINCIPAL AND SURETY: Foreign Corporations: Contracts: License: Action. The contracts of foreign corporations who do business in this State without first complying with the statute by obtaining a license from the Secretary of State are void and the courts of this State will not allow an action to be successfully maintained on such contract. And obtaining such license *after* doing the business, but *before* the action is brought will not aid the plaintiff.

2. ————: Statute: Constitution. The statute requiring foreign corporations doing business in this State to obtain a license from the Secretary of State, and forbidding the courts to allow any suit arising therefrom to be maintained has not been decided to be unconstitutional by the Supreme Court of this State.

3. ————: Office in This State: Agent: Bond: Doing Business. Plaintiff was a corporation organized in Kansas for the manufacture and sale of brooms. It established an office in Missouri with an agent where it received shipments of brooms and sold them. It required its agent to give to it a bond with a Missouri surety company as surety to secure his fidelity. He did so and the Kansas corporation accepted the bond. It was *held* that this was doing business in Missouri in the sense of the statute and that no action could be maintained on the bond.

4. ————: ————: ————. Such bond was *held* to be a Missouri contract.

195 M. A.—20

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson*, Judge.

REVERSED.

*John J. Cosgrove, R. M. Sheppard* and *John T. McCammon* for appellant.

*J. C. Petherbridge* for respondent.

ELLISON, P. J.—This is an action on a surety bond executed by defendant to plaintiff to indemnify plaintiff against any loss occasioned by the misbehavior of one Appelgate as plaintiff's employee in charge of its office in Missouri with authority to make sales. The judgment was for plaintiff in the trial court.

Plaintiff is a corporation organized in the State of Kansas for the purpose of manufacturing and selling brooms. It had a branch office in Kansas City Missouri, to which it shipped brooms and from which it sold and delivered them. Appelgate was the manager of this office and he executed his bond "to indemnify it (plaintiff) against loss on account of personal dishonesty amounting to larceny or embezzlement" and defendant became his surety. The petition, on its face, stated a violation of the bond by Appelgate.

At the time the business in selling brooms was transacted by plaintiff (through Appelgate) in its Missouri office, and during the accruing of Appelgate's defalcation, plaintiff had not complied with section 3039 of the 1909 statute of this State in reference to filing its statement with the Secretary of State and obtaining that official's license or certificate authorizing it to enter this State and transact its business. By the terms of section 3040 of such statute any foreign corporation now or which may hereafter "do business in this State" is subject to a fine of one thousand dollars, and, in addition to such penalty, no such foreign corporation "can maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of contract or tort." Subsequent to opening its office and making sale

of its brooms, but before this action was brought, plaintiff did comply with the statute.

In a long line of cases this statute has been upheld. And it has been applied to those instances, as in this case, where the offending corporation after the business was done out of which the controversy arose, but before suit was brought, complied with the statute and received its certificate from the Secretary of State. It being held that such belated action could not cover the past neglect; it being shown in those cases that to permit such practice would allow force to the statute only in those instances where the offending corporation was compelled to seek assistance from the courts. It was held in Carson-Rano v. Stern, 129 Mo. 381, that a compliance with the statute before suit was instituted would authorize the corporation to maintain the suit, even though business had been done and a contract made before such compliance. But that case was in effect overruled in Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404, and expressly disapproved in Zinc & Lead Co. v. Mining Co., 221 Mo. 7.

We had occasion to examine and construe the statute, in its entirety, in an instance where the corporation violated its provisions, but before an action was brought by its assignee complied with them. [Ehrhardt v. Robertson Bros., 78 Mo. App. 404.] And so it has been applied in a number of cases to various phases and conditions by the Supreme Court. [Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; Mill & Lbr. Co. v. Sims, 197 Mo. 507; Roeder v. Robertson (arising out of Ehrhardt v. Robertson, supra), 202 Mo. 522; U. S. Machinery Co. v. Ramrose, 210 Mo. 631; Zinc & Lead Co. v. Zinc Mining Co., 221 Mo. 7; Parke Davis & Co. v. Mullett, 245 Mo. 168; Cement Co. v. Gas Co., 255 Mo. 1, and the unreported case of Lewis Pub. Co. v. Rural Pub. Co., 181 S. W. 93, bottom of first and top of second column, page 105.]

But it is claimed by plaintiff that the Roeder, Cement Company and Lewis cases have pronounced unconstitutional that portion of the statute denying to

the offending corporation the right to maintain a suit in the courts of this State. We think that is neither the meaning nor the intention of the court. The court said that if the statute must be construed as denying the right of a foreign corporation to *enter* and *assert* its complaint in our courts, it would fall under the ban of the Constitution. But the court refused to give it that construction, stating that though the corporation would not be denied the right to assert its action, that is, to institute its suit setting up its complaint, yet if it was found to be such an action as was forbidden by the statute then it would not be allowed to *"maintain"* it, that is, would be denied relief. We do not understand that the minority of the court, entertained the view that the offending corporation should not be allowed to enter our courts and present its claim; otherwise there would be no way to ascertain what the claim was. The real division of opinion was over the right to successfully maintain certain character of actions; the majority holding that where, for instance, a party agreed to pay to a corporation which had not complied with the statute, a certain price for certain property delivered, and then, asserting that the agreement was void, refuse to pay the price, the corporation could come into our courts and maintain an action of replevin for the property.

We therefore hold that plaintiff, not having complied with the statute, should be denied the right to maintain this action, unless we find, as it insists we should find, that what transpired was not "doing business in this State," in the sense of the statute. We examined this question in the light of applicable authorities, in First Nat'l Bank v. Leeper, 121 Mo. App. 688, and held that the business done must be that for which the corporation was incorporated and not merely that which it might have authority to do; and that the sale of some of the stock of the corporation through an agent to an individual was not "doing business" in the statutory sense. Besides the cases there cited we find that Coal

OCTOBER TERM, 1916. 309

Kelly Broom Co. v. Mo. Fid. & Cas. Co.

& Mining Co. v. Ladd, 160 Mo. 435, and Hogan v. St. Louis, 176 Mo. 149 support that view.

But we think the facts in this case differentiate it from those or any of the cases cited therein. Here the plaintiff company had been prosecuting the business in this State for which it was incorporated in Kansas by shipping to its place of business in this State and selling therefrom the brooms it manufactured. In doing that business it became necessary to employ an agent and to assure his fidelity it was prudent and in keeping with reasonable business methods to take from defendant a surety bond and it did so by procuring the one in controversy. We think in such circumstances, that obtaining the bond from defendant was a part of the business it was doing; and that in obtaining it plaintiff was prosecuting or doing the business for which it was incorporated.

The Hogan case just cited does support plaintiff's theory. It was there held that a *contract* by a foreign corporation to do business in this State in the future, was not doing the business, and that it was not necessary to comply with the statute until the corporation begun to do the business in this State. But in this case, as we have seen, plaintiff *was* doing the business for which it was organized.

It is next suggested that the bond was executed by Appelgate and the defendant company and sent to plaintiff in Kansas for acceptance. That it thereby became a Kansas contract valid in that State and therefore should be treated as valid here. But the fact is it is a bond executed in this State to plaintiff as a party thereto, to secure the fidelity of Appelgate who was in charge of plaintiff's Missouri office and the business transacted therefrom. It does not fall within that class of cases which Trower Bros. v. Hamilton, 179 Mo. 205, 227, and Central Nat'l Bank v. Cooper, 85 Mo. App. 383, are types.

The judgment must be reversed. All concur.