Plaintiff, a banking corporation domiciled in the Town of Proctor, State of Vermont, in the year 1925, acquired the note of William C. Milburn, resident of Avoyelles Parish, for the sum of $8,500, dated July 1, 1925, payable January 1, 1932, stipulating six per cent (6%) per annum interest from date, payable annually, and eight per cent (8%) interest from maturity, which note was secured by special mortgage on tracts of land in said parish, aggregating several hundred acres. William C. Milburn, maker of the note, died on February 29, 1932, at which time the annual interest due for the year 1931 was in arrears. Under a stipulation in the act of mortgage warranting such action, the note as a whole was declared due and exigible by the holder, and executory process was sued out under which the mortgaged property was sold for $3,000 on June 18, 1932. Plaintiff herein was the purchaser. After payment of costs attending the suit and sale, the writ of sale was credited with $2,870.72. The several heirs of William C. Milburn were impleaded and served with process.
In August, 1932, plaintiff opened the succession of William C. Milburn in Avoyelles Parish under allegations that the succession owned property situated therein and owed debts. In due course an administrator was appointed and qualified and, thereafter, under order of court, to pay debts, the inventoried property, consisting of nearly six hundred (600) acres of land was offered for sale for two-thirds of its appraised value after proper advertisement; and failing to bring that amount, it was sold under order of court on twelve months' credit for $500. Plaintiff became the purchaser. After payment of court costs and privilege charges there remained of said price $276.50, which was paid over to plaintiff and credited on the $8,500 note.
On May 22, 1941, the present suit was filed by the Proctor Trust Company against Mrs. Ethel Milburn Pope, wife of George B. Pope, resident of Avoyelles Parish, wherein judgment is sought for 1/15th of the note of $8,500, plus interest and attorneys' fees less the credits of $276.50 and $2,870.72, mentioned above.
Mrs. Pope, the defendant, is one of five children of her father, James F. Milburn, who was a son and one of the three children of William C. Milburn, deceased, who had issue. By representation, she is an heir of her grandfather to the extent of 1/15th interest in his succession. She is proceeded against on the theory that she has unconditionally accepted the succession of her grandfather and thereby committed herself to personal liability for the debts of his succession to the extent of her virile share therein. The acts of Mrs. Pope, alleged by plaintiff as constituting said unconditional acceptance are these:
That in June, 1940, she, in concert with other heirs of William C. Milburn, deceased, representing 51/60ths interest in his succession, instituted suit in Avoyelles Parish against plaintiff herein to recover their respective alleged interest in the lands sold in said foreclosure suit and by the administrator of said succession. The validity of these two sales and the proceedings precedent thereto are attacked on various grounds. This suit, however, on the application of the defendant, was removed to the United States District Court for the Western District of Louisiana because of diverse citizenship. It had not been tried at the time the present appeal was submitted.
The petition in the present suit was excepted to on the following grounds, to-wit:
Lack of right or authority of plaintiff to sue in the court a quo and lack of jurisdiction of the court to consider and *Page 726 
entertain the suit because plaintiff is a foreign corporation, doing local and intrastate business, but has not complied with the laws of the state as a condition precedent to doing business therein, and has not paid a corporation franchise tax as thereby required.
Alternatively, in the order below named, the following pleas and exceptions, incorporated in the same instrument, were filed and urged, to-wit:
1. Prescription of five (5) years liberandi causa against the note.
2. Lis pendens, because of the position of plaintiff herein in its answer to the suit by the Milburn heirs, removed to the Federal court, mentioned above.
3. Estoppel, on the ground that the foreclosure proceedings were instituted and prosecuted to sale without calling upon the heirs of the mortgage debtor to accept or reject his succession; that no notice was given said heirs of the opening of the succession; that plaintiff removed said suit to the Federal court and in its answer thereto asserted the same demand as is herein asserted.
4. Exceptions of no cause and no right of action.
All of the exceptions and pleas were sustained. The suit was dismissed and from judgment so decreeing, plaintiff prosecutes this appeal.
The exceptions and pleas were tried and submitted at one and the same time. Testimony was adduced to support those which were not determinable from the face of the petition augmented by complementary exhibits. Because of this method of procedure it was urged by plaintiff below and is urged here that the benefits of the exception to the procedural capacity of the plaintiff (being dilatory in character) and the plea to the jurisdiction, have been lost by tacit waiver. It will be observed that these exceptions were made in limine and appear firstly in the pleading tendering them conjointly with other pleas and exceptions which, it will also be observed, were expressly made and tendered in the alternative.
We think plaintiff's position, as a whole, is not sound. It is true, as contended, that by encumbering a plea to the court's jurisdiction ratione personae with other pleas or exceptions, does have the effect of destroying the right to urge the jurisdictional plea since such plea must be tendered in limine and be unembarrassed by any other averment of fact. Martel Syndicate v. Block et al., 154 La. 869, 98 So. 400.
But the rule announced in this case and in others does not apply to an exception to procedural capacity, such as is here presented, because such an exception is not primarily directed to the court's jurisdiction but to the legal right of the plaintiff to judicially invoke the benefit of the laws of the state at a time when it, the plaintiff, has not met the requirements of other laws, compliance with which is a condition precedent to doing so. In this case it is obvious that the court had jurisdiction ratione personae and ratione materiae but to warrant the exercise of that jurisdiction, the plaintiff being a foreign corporation and its right to sue being challenged, it must be shown, as a condition precedent to the maintenance of suit, that it is not doing business in this state within the meaning of that term, since it is admitted that specific authority to do business in the state has not been procured from the proper authority, and no license or excise taxes have been paid by it.
Section 1 of Act No. 8 of Third Extra Session of the Legislature of 1935, reads as follows:
"Be it enacted by the Legislature of Louisiana, That no foreign corporation doing business in this State shall be permitted to present any judicial demand before any court of this State, unless and until it has complied with the laws of this State for doing business herein, and unless and until it has paid all taxes, excises and licenses due to the State, provided that nothing in this act shall be construed to prevent the bringing of a cause of action against any such foreign corporation."
Plaintiff objected to the admissibility of any evidence designed to establish that it had done any business in the state prior to May 22, 1941, the day on which the present suit was filed. The objection was properly overruled. If sustained, as is urged here, the proof necessarily would be restricted to such narrow limits, in point of time, as to make it virtually impossible in this and in any similar case to establish the truth of allegations that the foreign corporation was doing business in the state. The institution of a suit might and well could be the final act in a series of acts, which, when weighed and considered together, amount to doing business in the *Page 727 
state, whereas, the filing of suit and the performance of other acts by the corporation on the day of such filing could easily not amount to doing business in the state within the meaning of that term as defined by the courts.
Plaintiff does a general banking business at its domicile in the State of Vermont, which, of course, includes the making of loans on or purchasing notes and other commercial paper secured by mortgage against real estate. A copy of its charter or articles of incorporation was not introduced as evidence but judicial notice will be taken of the fact that a general banking business necessarily comprehends the right and the power to acquire through foreclosure proceedings and otherwise real estate and other property mortgaged or pledged as security to loans; and the same to sell, lease or otherwise to legally dispose of. This right and power constitutes an important, indispensable and substantial part of the business of such an institution.
Prior to 1930 plaintiff acquired from the Security Mortgage Company of Louisiana and from a company of the same name of Texarkana, Arkansas, some fifty notes of various persons in Louisiana, which were secured by special mortgages on real estate in the Parishes of Rapides, Avoyelles, Evangeline, St. Landry, East Carroll and Concordia. Through foreclosure proceedings and dation en paiements plaintiff became the owner of about 15,000 acres of the mortgaged lands.
In the year 1930 plaintiff employed Mr. Guy Sherrill of Alexandria, Rapides Parish, as its agent. He was vested with authority to look after and effect needed repairs to improvements on the cultivated portions of the land; lease said lands annually; collect and remit rents; negotiate sales; collect interest on and the principal of the original notes and those taken in connection with resales. A mineral lease on a large acreage in Avoyelles Parish was consummated in 1934 through his office and efforts. Rents and bonuses were paid to him in his fiduciary capacity. As plaintiff's agent he provoked the action necessary to open the succession of William C. Milburn and was appointed administrator thereof. He ceased to represent plaintiff in the year 1940, at which time it owned only some 2,000 acres of the original acquisitions amounting to 15,000 acres. Thereafter, plaintiff employed an agent in Dallas, Texas, to perform the same services which Mr. Sherrill had been performing. The new agent does not maintain an office in this state but acts through sub-agents in or sent into the state.
In addition to the foregoing, plaintiff annually paid taxes on its Louisiana property; had the benefit of services of the same Louisiana counsel; freely invoked the aid of the courts of the state and availed itself of the laws thereof to acquire the lands against which it held mortgages, and to lease and dispose of the same. In short, plaintiff's course of conduct in the state, with respect to its investments and property therein, was no different from that which a Louisiana banking institution would have done in like circumstances. It extended continuously over a period of more than ten (10) years and had not ceased when this suit was filed.
The question arises: Do these various acts and the course of conduct over so many years on the part of plaintiff amount to "doing business" in this state? We think so.
No act of the Legislature of this state has attempted to define or say what acts or course of conduct within the state by a foreign corporation shall constitute "doing business" therein. The law making powers of other states, so far as our research has extended, have not ventured to do so. The question has been left to the courts. Each case necessarily must be determined from its own facts. 23 American Jurisprudence, 335, § 361. Anent the question, on page 338 of this text book it is said:
"In any determination of the question whether a foreign corporation is doing business in the state, the fact that none of several acts or transactions, considered separately, constitute doing business is not conclusive. As stated by Mr. Justice Holmes, the court `cannot let the fagot be destroyed by taking up each item of conduct separately and breaking the stick. The activities and situation must be judged as a whole.' Thus, it has been declared that a foreign corporation may safely be said to be doing business wherever an important combination of functions is being performed, such as the ownership, possession, or control of property, dealing with others in reference to the property, the exercise of discretion, the making of business decisions, the execution of contracts, the marketing of a *Page 728 
product by advertising and solicitation, and collecting for the sold product."
The Supreme Court in R.J. Brown Company v. Grosjean, Superintendent of Public Accounts, 189 La. 778, 180 So. 634-636, considered and passed on facts asserted by defendant to be adequate to constitute on plaintiff's part "doing business" within the state, and in conclusion said:
"The rule of law is that, when a foreign corporation transacts a substantial part of its ordinary business in a state, it is doing, transacting, and carrying on or engaging in business therein. C.J. 14-A, 1270; General Railway Signal Company v. Virginia, 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854, and Harnischfeger Sale Corporation v. Sternberg Company, Inc.,179 La. 317, 154 So. 10; Duluth Log Co. v. Pulpwood Co., 137 Minn. 312, 163 N.W. 520; Meade Fibre Co. v. Varn, 4 Cir., 3 F.2d 520; International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; M.A. Kelly Broom Co. v. Missouri Fidelity 
Casualty Co., 195 Mo.App. 305, 191 S.W. 1128."
Surely the large volume of business transacted by the plaintiff in this state over so many years, was a "substantial part of its ordinary business" within the purview of the announced rule.
The conclusion we have reached on the discussed exception obviates passing on other exceptions and pleas.
The judgment appealed from being, in our opinion, correct, it is hereby affirmed with costs.