## AMALGAMATED ZINC and LEAD COMPANY, Appellant, v. BAY STATE ZINC MINING COMPANY.

### Division One, May 31, 1909.

1. **FOREIGN CORPORATION: Capacity to Sue: License After Suit Brought.** A foreign corporation cannot come into this State, open up a place of business and carry on in this State a part of the business authorized by its charter, in violation of the law requiring it to first have a license to do business in this State, and then after it has instituted suit to enforce its right to property in this State maintain said suit by obtaining a license from the Secretary of State. It has no right to institute suit unless it has a license from the State; and non-compliance with the statute before the suit is brought is not cured by a compliance before trial.

2. ——: ——: **Capacity to Contract: Non-Enforceable.** An assignment of a lease of Missouri mining lands, made in this State, to a foreign corporation which has not been licensed to do business in this State, and to be wholly performed in this State, cannot be enforced by said corporation in the courts of this State. Such assignment is absolutely void, and a subsequent compliance with the statute thereafter by taking out a license from the State, and the obtaining of a new lease from the land-owner after the suit was brought, did not validate it; and its contract being invalid, the company is entitled to no relief thereunder at the hands of a court of equity in a suit to enjoin another company from mining ore from the leased lands.

3. ——: **Lease: Assigned to Trustee.** A mining lease from the land-owner to a private person, as trustee, for a foreign corporation, which has not been licensed to do business in this State, and which at the time was carrying on the business of mining on the lands covered thereby, and subsequently by written instrument transferred to the company, stands on the same footing as if it had been made directly to the corporation, and can-

not be enforced. And a suit to enjoin another mining company from mining ore from the lands cannot be maintained by said foreign corporation, even though after the suit is brought and before trial such corporation obtains a license from the Secretary of State to do business in this State and also obtains a new lease from the landowner.

Appeal from Jasper Circuit Court,—*Hon. Hugh Dabbs,* Judge.

AFFIRMED.

*Thomas Dolan* for appellant.

(1) Injunction is the proper remedy in this case, upon the pleadings and evidence set out in the record. Kamp v. Schrader, 45 Mo. 505; Lytle v. James, 98 Mo. App. 337; Jack Harvard Co. v. Continental Zinc Co., 106 Mo. App. 66. (2) No part of the defense set up by defendant in its answer was proven, except the fact that when this suit was brought, appellant, a foreign corporation, had not obtained a license to do business in the State of Missouri, but it was shown that shortly after bringing suit, and long prior to the April term, for which said suit was brought, appellant was duly and regularly licensed to do business in Missouri. Under the ruling in the case of Carson-Rand Co. v. Stern, 129 Mo. 381, this has been held to be sufficient to entitle it to maintain this action. Besides, this action was brought, not to enforce some contract made in the course of business prohibited because of having no license, but to protect its property, to stay the hand of a tresspasser. It has not been held in this State that because a foreign corporation has neglected to comply with the law its property may be looted with impunity. On the contrary, it has been held in other jurisdictions that it can not be destroyed or taken from it. Railroad v. Fire Assn. (Ark.), 30 S. W. 350; Beale on Foreign Corp., sec. 252. It appears from all the evidence that defendant—a mere tresspasser—en-

tered upon the mining lots of the plaintiff, and against its protest boldly took its ore, and continued to take same.

*Cole, Burnett & Williams* for respondent.

(1) Plaintiff's alleged cause of action is based upon rights it claims to have acquired under the assignment of a lease to it in 1904. At that time plaintiff was unlawfully engaged in business in Missouri, and long had been, as a foreign corporation without authority or license from the State. It legally acquired no rights under the lease. Its lease was void. Amusement Co. v. Amusement Co., 192 Mo. 404; State ex inf. v. Standard Oil Co., 194 Mo. 124; Mill & Lumber Co. v. Sims, 197 Mo. 507; Bank v. Leeper, 97 S. W. 636; Wilson-Moline Buggy Co. v. Priebe, 100 S. W. 558; Roeder v. Robertson, 202 Mo. 522; United Shoe Machinery Co. v. Ramlose, 210 Mo. 649. (2) Plaintiff commenced this action in 1905; afterwards, in 1906, it complied with Sec. 1025, R. S. 1899, and so having failed to comply with the statute, when it attempted suit, could not "maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether arising out of contract or tort." R. S. 1899, sec. 1026. (3) If a right of action did not exist at the time the suit was brought, subsequent transactions by the plaintiff cannot be invoked to relieve plaintiff from the result of its premature conduct or its premature action in the court. Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404.

GRAVES, J.—Plaintiff, a corporation under the laws of New Jersey, on December 27, 1905, filed a petition in the circuit court of Jasper, the purpose of which was to enjoin and restrain the defendant from mining on the east half of a certain tract of ground known and described as Lot 107 in the north-

east quarter of section 4, township 27, range 33, in Jasper county, Missouri, as shown by a certain plat of said ground for mining purposes as made out and posted by the Granby Mining & Smelting Company, the owner in fee of said ground. Plaintiff claimed the right to mine said east half of Lot. 107 by virtue of mesne assignments of a license to mine that tract and other lots, given by the said Granby Mining & Smelting Company. The petition then charged that defendant had been mining on said tract and although notified not to so do, was still mining thereon, and after charging irreparable injury and damages and inadequate legal remedies, prayed for an injunction as aforesaid.

By the answer the defendant pleaded:

1. That plaintiff was a foreign corporation, and had not complied with the laws of this State by filing with the Secretary of State a copy of its charter or certificate of incorporation, and had no license to transact business in this State, and had no right to commence or maintain a suit such as this or any other in the courts of this State.

2. Defendant admitted its corporate capacity; admitted that it was in possession of that part of the premises described in plaintiff's petition, specifically describing the same by metes and bounds; admitted that it was mining on the same at the commencement of this suit; admitted that it had been so engaged long prior to the filing of the suit and purposed to continue said mining, but denied all other matters not specifically admitted.

3. Defendant further pleaded that it was mining on such disputed tract by virtue of an agreement with plaintiff, which agreement is described in detail, as well as defendant's conduct thereunder, and this portion of the answer concludes by a plea of estoppel.

4. Defendant avers that the petition does not state facts sufficient to entitle plaintiff to injunctive relief.

Reply was a general denial.

At the trial evidence was heard subject to objections and at the close of the plaintiff's case the court sustained a demurrer to the testimony.

Over the objection of the defendant the plaintiff put in the following documentary evidence: (1) certificate and license issued to plaintiff by the Secretary of State of Missouri, of date January 25, 1906; (2) mining license from Granby Mining & Smelting Company, of date March 1, 1899, to Rafael Estrada and covering the land in dispute; (3) written transfer of the above named mining license or lease from Rafael Estrada to W. W. Lowe, trustee, of date May 31, 1904; (4) written transfer of the first named license, of date October 14, 1904.

By oral proof it was shown that in March, 1906, the plaintiff got a new license or lease from the Granby Mining & Smelting Company; that plaintiff had been mining on the property covered by the Estrada lease since 1902; that W. W. Lowe was trustee for the plaintiff in the instrument made to him and described above; that plaintiff notified defendant to cease mining on the disputed tract, which was done for about three weeks and that then mining was resumed and continued until the granting of the injunction; that the ore was six per cent ore and valuable; that defendant purposed further operations on this land unless restrained by injunction. Such are the facts of the case. Counsel seem to agree that the court, *nisi*, dismissed plaintiff's bill on the theory that it had no license to transact any business in this State prior to January 25, 1906, and therefore could not maintain this suit, but whatever may have been the views below, we have detailed an outline of the facts, and can, as we have the right, proceed to determine the merits.

Contentions of counsel both pro and con will be noted in the course of the opinion, so far as may be required.

I.   There are two questions presented by this record, (1) can plaintiff, a foreign corporation, without license to do business in this State, but having actually been resident in the State, and transacting its charter business therein for some years, be permitted to bring an action in our courts, and after having so brought the action, be permitted to maintain and prosecute it, by taking out the required license before trial?   And (2), if it can thus give itself a status or standing in our courts, can it further enforce contracts which it has made and which are to be fully performed in this State?   Of these questions in their order.

We are inclined to think that both contentions must be answered in the negative.   But they are so closely related that a discussion of the one necessarily involves the discussion of the other.   That a foreign corporation can sue in Missouri on contracts made outside of Missouri, or made by salesmen traveling for them in Missouri, can sue in the courts of the State without license from the Secretary of State is unquestioned.   But the question here is, can a foreign corporation come into this State, open up a place of business and actually do a part of the business authorized by its charter, in violation of our law and without taking out a license and otherwise complying with our statutes, have the doors of our courts open to them, to protect the unlawful business?   We think not.   If the petition in such cases disclosed the facts aforesaid it would be be demurrable.   Whilst we have held that the plaintiff in such cases does not have to plead that it has a license to do business, and that the failure so to plead   does not make the petition demurrable, United Shoe Machinery Co. v. Ramlose, 210 Mo. l. c. 649, yet there can be no question that if it appeared

upon the face of the petition that the plaintiff, a foreign corporation, had established a place of business in the State and had actually been doing business in the State, without a license, such a petition would be demurrable, because of the fact that it would disclose that the party plaintiff had no right to sue. Now advancing a step, if the party was incapacitated to sue at the institution of the suit, can such party cure such incapacity by taking out a license thereafter and before trial? We think not. There is diversity of opinion among the courts. *Vide* note to case of National Fertilizer Co. v. Fall River Five Cents Savings Bank (Mass.), 14 L. R. A. (N. S.) 561, *et seq.* The annotator, in discussing the right to maintain a suit before license is issued, but in which license was procured before trial, says: "Of course, in those jurisdictions in which it is held that any contract entered into by a foreign corporation before complying with the requirements of the local statute is void, the particular question presented in the foregoing case could not arise; for, if the contract is void from the beginning, subsequent compliance with the requirements of the statute, either before or after bringing suit, would not remedy the defect. In those jurisdictions, however, which hold that such contracts are not invalid, but merely unenforceable by the corporation before its compliance with the statutory requirements, there is much difference of opinion as to the effect of a compliance after the commencement of the suit, but before judgment."

In this State we hold, as we shall show in a subsequent paragraph, that the unlawful contract cannot be validated by taking out a license after the making of the contract, hence our State falls within that class of jurisdictions mentioned in the first paragraph of the quotation, *supra;* for that reason we suggested in the beginning that the two questions were much intertwined in the case at bar.

We are not unaware that in Carson-Rand Co. v. Stern, 129 Mo. 381, this court held that where a foreign corporation had filed an attachment suit prior to taking out license, and between the time of bringing the suit and a motion to dismiss the case for the reason that it had not taken out license, it did comply with our law, and take out the license, it could maintain said suit, and the judgment of our Brother VALLIANT then on the court, *nisi,* was reversed, but as pointed out by GOODE, J., in the recent case of Manufacturing Co. v. Construction Co., 124 Mo. App. l. c. 362, the Carson-Rand case has in effect been overruled in the case of Tri-State Amusement Co. v. Forest Park Highlands Amusement Co., 192 Mo. 404. We did not expressly overrule it, but when upon examination of the record in that case it is seen that an agreed statement of facts upon which the motion to dismiss was submitted, as Judge GOODE, in the case, *supra,* says, "contained, among other things, the agreement that plaintiff had for a long time conducted a lumber yard in St. Louis; that the notes in suit were made and executed in the city of St. Louis, were payable in St. Louis and that the sales of lumber for which the notes were given were made in St. Louis," then it is apparent that it has been in effect fully overruled by not only the case in 192 Mo., *supra,* but in all subsequent decisions. The effect of Judge BARCLAY's decision was to hold that the subsequent taking out of the license validated the notes sued on in that case and he accordingly reversed and remanded the case "for further proceedings."

Not only have our courts discredited the doctrine of the Carson-Rand case, but in Minnesota, wherein they have practically the same statute as ours, the court refused to follow that case. The Minnesota court in Brewing Co. v. Peimeisl, 85 Minn. l. c. 124, says: "Counsel for the plaintiff practically concede that by virtue of this provision it could not maintain

any action in our courts upon such a demand until it complied with the statute, but claim that the statute does not prohibit the commencement of the action, and that the plaintiff may, after its non-compliance has been pleaded as a defense, comply with the statute and maintain the action. The case of Carson-Rand Co. v. Stern, 129 Mo. 381, is cited in support of this contention. The case is in point, for the statute there under consideration was similar to our own. But we cannot accept this construction of the statute, for a prohibition against maintaining an action implies a prohibition against beginning it, for the beginning of the action is one of the necessary steps in maintaining it. More than that, the construction of the statute urged on behalf of the plaintiff would invite and foster the very evil it was intended to prevent. It would enable foreign corporations to do business in this State in defiance of our laws until some party, perchance, pleaded its non-compliance in an action brought by it to enforce a demand against him. Then it would comply and the action would proceed. Such a construction is contrary to the letter and spirit of the statute, and, if adopted by the court, would directly tend to defeat the public policy sought to be enforced by its enactment. The most efficient way to compel obedience to this statute is to enforce it as it reads, and not amend it by judicial construction so as to enable foreign corporations to avoid the consequences of a non-compliance with its terms by complying after the penalties have been incurred. We therefore hold that a foreign corporation doing business in this State without first complying with the statute cannot maintain an action in the courts of this State upon any contract or demand growing out of such business. Nor will compliance by it with the statute after the making of such a contract, or after the commencement of an action thereon, remove the bar of the statute. The conclusion is supported by the decisions of the

courts of other States having a similar statute. [J. Walter Thompson Co. v. Whitehed, 185 Ill. 454, 56 N. E. 1106; Cary-Lombard Lumber Co. v. Thomas, 92 Tenn. 587, 22 S. W. 743; Ehrhardt v. Robertson, 78 Mo. App. 404.]''

In Halsey v. Henry Jewett Dramatic Co., 99 N. Y. Supp. 1. c. 1124, the court says: ''The language of section 181 of the tax law is that every foreign corporation not excepted, authorized to do business under the general corporation law, shall pay a license tax within the time prescribed, or else it shall not maintain an action in the courts of the State. The answers demurred to allege that this tax had not been paid when the action commenced, and, if that be true, then the action cannot be maintained. The fact that the tax was paid after the action was commenced does not change the situation. The plaintiff had no right to bring the action, and, having brought it without right, he cannot, notwithstanding the payment of the tax thereafter made, continue and maintain an action which he, in the first instance, had no right to bring.''

We quite agree with the Minnesota court in that the beginning of a suit is but one step in maintaining it. The construction of the word ''maintain'' as given in the Carson-Rand case is too narrow, when we consider the purpose of the statute wherein it is used, i. e., Revised Statutes 1899, section 1026.

The plaintiff in the case being incapacitated to sue in the first place, did not so change its status by taking out the license as to be permitted to further prosecute a suit brought in defiance of the statute. These statutes, sections 1025 and 1026, Revised Statutes 1899, have been so often quoted in the cases hereinafter cited that a reproduction here would be superfluous.

II. But going to the contract which is the basis of plaintiff's right to maintain this suit, i.e., the license

or lease which by mesne assignments from Estrada came to plaintiff, how stands the plaintiff? It is only by this instrument that plaintiff has any standing in court. This is a Missouri contract assigned in Missouri to a foreign corporation. This assignment to Lowe, trustee, was but an assignment to the corporation under the undisputed evidence. The plaintiff was in Missouri actually transacting its business in 1902, nearly two years before the assignment of the contract or license. The contract was to be wholly performed in Missouri, and the plaintiff was working its mines under this contract and had been for months prior to this suit. All this it did in open violation of our statutes. When it assented to this assignment it undertook to make and perform a Missouri contract relative to the business it was authorized by its charter to do in its native State. It established its business in Missouri, with a superintendent in charge, all in violation of law. It was here in open violation of law before it made this contract, and so continued thereafter. Under such circumstances its contract is absolutely void, and no act of it thereafter by taking out license and otherwise complying with our statutes can validate it. [R. S. 1899, sec. 1026; United Shoe Machinery Co. v. Ramlose, 210 Mo. 631; Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404; Mill & Lumber Co. v. Sims, 197 Mo. 507; Roeder v. Robertson, 202 Mo. 522; Manufacturing Co. v. Construction Co., 124 Mo. App. 1. c. 362; First National Bank v. Leeper, 121 Mo. App. 688; Wilson-Moline Buggy Co. v. Priebe, 123 Mo. App. 521.]

Without a valid contract the proof failed to show that the plaintiff was entitled to any relief at the hands of a court of equity, nor for that matter in a court of law. We conclude that it neither had the right to bring or maintain the suit, nor did it show

facts to make a case. Taking out a license after bringing the suit neither validated the theretofore illegal contract, nor did it change the status of the plaintiff, at the time of the institution of the suit. Being an outlaw at the beginning of the case it must so continue throughout.

The judgment, *nisi.* is correct and is affirmed.

All concur.