# MERGENTHALER LINOTYPE COMPANY, Appellant, v. W. B. HAYS and SAMUEL W. DAVIS, Respondents.

**Springfield Court of Appeals, June 27, 1914.**

1. CORPORATIONS: Foreign: Failure to Comply with Statutory Requirements: Must be Pleaded in Defense. The failure of a foreign corporation doing business in this state to comply with the provisions of sections 3037-3041, with reference to obtaining a license, filing a copy of its charter, etc., is a matter of defense .to be affirmatively alleged by the party relying on it.

2. ———: ———: ———: Pleadings Examined. Action on a contract by a foreign corporation. Answer and reply examined and *held* insufficient to raise the issue whether the corporation was doing business in the state.

3. ———: ———: "Doing Business in the State:" What is Not. Isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and citizens of another state are not a "doing or carrying on of business"? by a foreign corporation within the latter state even where the transaction is of such a character as to constitute a part of the ordinary business of a corporation.

4. ———: "Doing Business in the State:" What is Not. A foreign corporation with no office or place of business in the state through its traveling salesman leased to defendants a linotype machine, with option to purchase. The lease was approved and executed by plaintiff at its home office in New York. *Held*, not "doing business within the state" within the purview of sections 3037, 3041, R. S. 1909, which requires foreign corporations "doing business within the state" to obtain a license therefor, but was purely an interstate transaction in its character.

5. ———: Foreign: Interstate Transaction: Citation of Authorities. On the question as to what constitutes an interstate transaction, line of authorities cited.

6. CORPORATIONS: Foreign: Right to Own Property: Limitations on: "Doing Business in the State." The mere ownership of personal property by a foreign corporation is not pro-

182 Mo. App.—8

hibited under the Missouri law. It is the "doing business in the state" with that property that sections 3037, 3041, R. S. 1909, are designed to reach.

Appealed from Butler Circuit Court.—*Hon. J. P. Foard*, Judge.

REVERSED AND REMANDED.

*Abbott & Edwards* for appellant.

(1) The defense that a foreign corporation has not complied with the laws of the State where the suit is brought and for that reason cannot maintain a suit in the courts of that State, is an affirmative defense, and the defendant, if it relies upon said defense, must state all the facts which are necessary to bring its defense within the statute. It is not incumbent upon a foreign corporation to plead compliance. United Shoe Machinery Co. v. Ramlose, 210 Mo. l. c. 649; Gromeweg & Schmoentgen Co. v. Estes, 139 Mo. App. 36. (2) Defendants failed to allege facts sufficient to show that plaintiff was, at the time of the transaction, doing business in this State. The replication expressly alleged that it was not doing business in this State. In this state of the pleadings, defendants' motion for judgment on the pleadings, should have been overruled. "Doing business" in this State was an averment essential to the defense, assuming the statute is constitutional and applicable. Sec. 3040, R. S. 1909; Hovey v. DeLong Hook & Eye Co., 147 App. Div. 887; Gromeweg & Schmoentgen Co. v. Estes, 139 Mo. App. 36; Ellis Lumber Co. v. Johns, 152 Mo. App. l. c. 519. (3) The installation of machinery by a foreign corporation does not constitute "doing business" within the meaning of a statute prescribing certain conditions upon which a foreign corporation may do business within the State. 14 L. R. A. (N. S.), 693, note. (4) A single transaction of business within

the State is not doing business therein, within the meaning of statutes prescribing the conditions upon which foreign corporations may do business within the State. 10 L. R. A. (N. S.), 693, note; 22 Am. & Eng. Annotated Cases, 553, note; 19 Cyc. p. 1268; Chicago Crayon Co. v. Rogers, 30 Okla. 310; First National Bank v. Leeper, 121 Mo. App. 1. c. 692; Painter v. Railway Co., 104 S. W. 1139; Meddis v. Kenney, 176 Mo. 200.

*Sheppard & Green* for respondent.

(1) Under the pleadings in this case the respondent, W. B. Hays, was entitled to have judgment rendered in his favor. Since the appellant had not complied with the provisions of section 3037, R. S. 1909, the contract made by it is absolutely void and a suit thereon by it could not be maintained, and the trial court properly so held. Sec. 3039, R. S. 1909; Sec. 3037, R. S. 1909; United Shoe etc. Co. v. Ramlose, 210 Mo. 631; United Shoe etc. Co. v. Ramlose, 231 Mo. 508; Amalgamated etc. Co. v. Mining Co., 221 Mo. 7; Chicago etc. Co. v. Sims, 197 Mo. 507; Tri-State Amus. Co. v. Amus. Co., 192 Mo. 404; Sec. 3040, R. S. 1909; Diamond Glue Co. v. U. S. Glue Co., 187 U. S. 1. c. 613; Ehrhardt v. Robertson Bros., 78 Mo. App. 404; Wulfing v. Armstrong Cork Co., 250 Mo. 723; Elliott v. Parlin, 71 Kan. 665; Hastings Indust. Co. v. Moran, 107 N. W. 706; Farmers Loan & Trust Co. v. Lakestreet Co., 51 N. E. 55; 173 Ill. 439; Ceaser v. Capell, 83 Fed. 403; Brooks v. Nevada Nickel Synd., 53 Pac. 597, 24 Nev. 311; Groel v. United Electrical Co., 60 Atl. 822; 69 N. J. Eq. 397. (2) The incapacity to sue cannot be cured and the contract cannot be validated by compliance after suit and before trial. Amalgamated, etc. v. Mining Co., 221 Mo. 7; Blevins v. Fairley, 71 Mo. App. 259; Chicago, etc. v. Sims, 197 Mo. 507.

STATEMENT.—The plaintiff is a New York corporation and at the time of making the contract and lease —the basis of this suit—had not complied with sections 3037 to 3041 inclusive, R. S. 1909, providing for foreign corporations doing business in Missouri and prescribing penalties. The penalty particularly involved in this case is that denying a foreign corporation, doing business in this State without having complied with these sections of the law, the right to maintain an action in our courts arising out of contract or tort.

The plaintiff alleged that it is engaged in the manufacture, sale and distribution of linotype machines; that there is due it $1,265, representing two annual rental charges of $632.50 each, payable in advance on the fourteenth day of June for the years 1911 and 1912; that the defendants are the owners and proprietors of the Citizen-Democrat, a publishing company in Poplar Bluff, Mo.; that the lease was for a term of six years commencing in June, 1910; that the first year's rent, beginning June 14, 1910, had been paid, and that after demand for the payment of the rent for the two years named, it was refused. Plaintiff further alleged that pursuant to the contract it shipped the machine to Poplar Bluff and set it up in perfect working order, and that plaintiff fully performed its contract.

The defendant Hays answered by a general denial, and the following plea:

"Further answering, this defendant states that the plaintiff, the Mergenthaler Linotype Company, at the time of the execution of the contract and lease set out in plaintiff's petition, was and is still a foreign corporation, incorporated, organized and existing under the laws of the State of New York; and that said corporation is a corporation organized for pecuniary profit, and as such has not complied with the laws of the State of Missouri relating to foreign corporations, in this: That said Mergenthaler Lino-

type Company of New York had not at the time of the making of this contract and at the time of bringing this suit, filed with the secretary of State of the State of Missouri, a copy of its articles of association and charter granted by the State of New York, and had not then procured from the Secretary of State a license to do business in the State of Missouri.

"Defendant further states that the Mergenthaler Linotype Company of New York, not having complied with the laws of this State regulating foreign corporations as aforesaid, and not having received a certificate for a license from the Secretary of State authorizing it to do business in this State as aforesaid, it was and is unlawful for said corporation to transact business in this State without a compliance with the statute in such cases made and provided, and that the contract and lease referred to in plaintiff's petition is unlawful and void, and plaintiff cannot maintain this suit."

The plaintiff replied as follows:

"Plaintiff admits that it was at the time of the execution of the contract and lease set out and referred to in plaintiff's petition and now is a foreign corporation organized and existing under the laws of the State of New York, and that it was organized for pecuniary benefit.

"Plaintiff denies that at the date of said contract and lease it had not complied with the laws of the State of Missouri relating to foreign corporations.

"Plaintiff admits that at the time of the making of the contract and lease set out in its petition it had not filed with the Secretary of State of Missouri a copy of its articles of association and charter granted by the State of New York. Also admits that at the time of the making of the contract and lease referred to it had not filed with the Secretary of State of the State of Missouri a copy of its articles of association and charter granted by the State of New York. Also

admits that at that time it had not procured from the Secretary of State a license to do business in the State of Missouri. Further replying to said amended answer this plaintiff states: That at the time of the execution of the contract and lease referred to in its petition it was not doing business in the State of Missouri, nor did it keep an office in said State for the purpose of transacting its business authorized to be transacted by its charter and articles of incorporation. That at the time of the making of said contract and lease plaintiff had a salesman traveling in Missouri soliciting persons to buy the linotype machine mentioned in plaintiff's petition. That the said traveling salesman employed by plaintiff at that time made the contract and lease referred to in plaintiff's petition with these answering defendants, W. B. Hays and S. W. Davis, subject to the approval and ratification of plaintiff at its office in New York. That said contract and lease referred to was agreed to, approved and executed by plaintiff at its office in New York on the date it bears; that plaintiff's salesman in Missouri presented its contract and lease to these answering defendants who executed the same and that said linotype machine was delivered to these answering defendants W. B. Hays and S. W. Davis. Plaintiff alleges it did not open an office in Missouri, for the transaction of business until the first of January, 1913.''

Thereafter, a motion for judgment on the pleadings was filed, alleging the following grounds:

''First: Because it appears from the allegations in plaintiff's replication filed herein that the plaintiff is not entitled to recover in this case.

''Second: Because, upon the pleadings filed in this case, judgment should properly be awarded the defendant, W. B. Hays, herein.''

This motion was sustained and judgment entered, from which judgment this appeal is prosecuted.

Both parties rely upon so many of the contract provisions as sustaining their respective positions that we find it necessary to burden this statement with a copy of the contract. It follows:

"This agreement, made and entered into this twelfth day of May, 1910, by and between Mergenthaler Linotype Company, a body corporate, organized and existing under the laws of the State of New York, hereinafter designated the lessor, of the first part, and William B. Hays and Samuel W. Davis, co-partners, of Poplar Bluff, Missouri, proprietors of the Citizen-Democrat, hereinafter designated the lessees, of the second part:

"Witnesseth, That for and in consideration of the mutual covenants, obligations and considerations hereinafter mentioned, the respective parties hereto have agreed and do hereby agree together as follows:

"First:—The lessor agrees to deliver to the lessees on the terms and conditions hereinafter named: One (1) Two-letter Linotype Machine, Model 5 No. 14,088, and One Two-letter Duplex Equipment.

"Second:—The lessor agrees that said machine shall be in operative condition and capable of setting, when operated by an expert, at least 5,000 ems nonpareil per hour.

"Third:—The lessor agrees that after the receipt of the first year's rental, as hereinafter provided, delivery of said machine, its belongings and accessories, shall be made to the lessees f. o. b. City of New York.

"Fourth:—The lessor agrees that it will, if so requested, furnish at the expense of said lessees, a competent machinist to erect said machine at the place of business of the lessees, and a skilled operator to instruct the employees of the lessees in the use of the machine.

"Fifth:—The lessees agree to accept said machine, its belongings and accessories, at the factory of the lessor, Borough of Brooklyn, City of New York, and

cause them to be at once transported to and erected in a safe and suitable location in their place of business, No. 220 South Fourth Street, Poplar Bluff, Missouri, and to pay the wages and expenses of machinists and operators, including the time and amounts necessarily spent by them in traveling, and all freights upon the machine, its belongings and accessories, from the City of New York, to Poplar Bluff, Missouri, and to pay the lessor for said machine, its belongings and accessories, yearly and in advance, during the whole of the term herein provided for, the annual rental of Six hundred thirty-two and 50/100 dollars ($632.50) (New York exchange); said rental for the first year to be due and payable as soon as the said machine is ready for delivery and before delivery of same is made. The period, however, to which the first year's rental shall apply shall commence thirty days after the date at which said machine is ready for delivery; the object of said allowance of thirty days without rental being to give the lessees time in which to transport the said machine to, and to erect it in, their place of business aforesaid and to become familiar with its use.

"Sixth:—The lessees agree that should a promissory note or notes be at any time accepted by the lessor instead of cash or New York exchange for said rental or any part thereof, only payment of said note or notes shall be payment of said rental, and upon default in the payment of any of said notes, or upon the failure of the lessees to perform any other of the covenants, conditions or obligations of this agreement, or if the lessees shall become bankrupt or insolvent, or shall part with the machine without the consent of the lessor, either by their own act or by operation of law, the lessor may at its option terminate this agreement by notice in writing and take possession of and remove said machine, its belongings and accessories, and all moneys theretofore paid shall belong to the lessor.

and the lessees shall have no claim for the return of the same or any part thereof.

"Seventh:—The lessees agree that they will maintain the said machine, its belongings and accessories, in good and operative condition, and to that end will cause the same to be cared for by a competent man and at their own expense at once replace and repair all such parts of said machine, its belongings and accessories, as may be broken, worn out or damaged; and that the said machine shall not be operated more than sixteen hours per day; and that they will allow the agents of the lessor access to said machine at all reasonable times, and that they will, whenever so requested, furnish to the lessor a waiver of landlord's lien upon said machine, its belongings and accessories.

"Eighth:—The lessees agree that they will not remove the said machine, its belongings and accessories, or any part thereof, from their said place of business without the consent in writing of the lessor, and that they will not assign, mortgage, transfer, underlet or part with the possession of the same, or any part thereof, or any interest therein, either directly or indirectly, and that they will not do or permit to be done anything whereby they or any part thereof shall or may be seized, taken in execution, attached, removed, destroyed or injured.

"Ninth:—The lessees agree that they will pay, bear and discharge all taxes that may be charged, assessed or imposed upon the said machine, its belongings and accessories, or any part thereof, or any valuation thereof, during the term of this lease, and will pay to the said lessor, in addition to the rental hereby reserved, the cost of insuring said machine, its belongings and accessories, during the whole of the term herein provided, against loss or damage by fire to the amount of $1150.00 for the benefit of the lessor, the premium for such insurance, however, not to exceed the local ruling rate at Poplar Bluff, Missouri,

and to be paid by the said lessees to the said lessor upon demand.

"Tenth:—It is mutually understood and agreed that this lease is made for the term of six years, but if the lessees shall desire to discontinue the use of said machine at the end of the first year, they shall have the right so to do, provided that they shall have given the lessor notice in writing to that effect thirty days before the expiration of the said first year, and provided further that they shall, at the end of said first year, have caused said machine, its belongings and accessories, to be properly boxed and delivered f. o. b. at Poplar Bluff, Missouri, addressed to the lessor, Borough of Brooklyn, City of New York, or as the lessor may direct, without charge or cost to the lessor; otherwise (unless the lessees shall have exercised the option of purchase hereinafter provided for) this lease shall continue in force and be binding upon both parties hereto to the end of the sixth year, subject to the annual payment by the lessees to the lessor of $632.50 at the beginning of each year, and to all the terms and conditions of this agreement, and at the end of said period of six years said machine, its belongings and accessories, shall be returned by the lessees to the lessor by delivery as above provided, without cost or charge to the lessor.

"Eleventh:—The lessees further agree that unless they shall have purchased the said machine from the lessor, or unless and until they shall have returned the same to the lessor in the manner hereinbefore provided, they will continue to pay to the lessor the annual rental of $632.50 at the beginning of each year, and all the covenants and obligations of the lessees under this agreement shall continue in full force and effect.

"Twelfth:—It is distinctly understood and agreed between the parties hereto, that this instrument is not to be considered in any sense a bill of sale or evidence

of a conditional sale, and that the entire right, title and interest of every kind in and to the said machine, its belongings and accessories, is now and is to remain in the lessor until the lessees shall have exercised the option of purchase and shall have fully completed the purchase as hereinafter provided.

"Thirteenth:—In case the lessees shall have paid said first year's rental in full as herein provided, and shall have paid the lessor for such repairs as it shall have made upon said machine and for such parts and supplies as it shall have furnished for its use, and shall have also performed all of the other covenants, conditions and obligations of this instrument by said lessees to be performed, and then only, said lessees shall have the right to purchase said machine, its belongings and accessories, from said lessor by the payment to the said lessor of the sum of Twenty-six hundred eighty-two and 50/100 dollars ($2682.50), but such right of purchase may be exercised by said lessees only in case said lessees shall, within eleven months from the date of the delivery of the machine as aforesaid, have given said lessor notice in writing of the intention of said lessees to make said purchase, and in the event of such purchase and payment within thirteen months from the date of the delivery of the machine as aforesaid then, and not otherwise, the legal title to said property shall pass to said lessees and this lease shall cease and determine.

"It is, however, expressly agreed that the right of purchase hereinabove provided for shall not be exercised by any person or party other than the said lessees, and that until the purchase and payment hereinabove provided for shall have been completed, made and performed, the entire right, title and interest of every kind in and to said property shall remain in said lessor, subject only to the right of said lessees to use said machine as lessees, and not as purchaser.

"Fourteenth:—The lessees shall, when thereunto requested by said Mergenthaler Linotype Company, forthwith execute and deliver to said Mergenthaler Linotype Company such new agreement, in form to be approved by said Mergenthaler Linotype Company, or such other statement, affidavit, instrument or assurance as may by said Mergenthaler Linotype Company be deemed proper and necessary to continue and protect its ownership and control of the property hereby leased.

"Fifteenth:—The lessor, by reason of its interest that said machine, its belongings and accessories, may remain in perfect condition and maintain their reputation, agrees that it will furnish the lessees with any and all spacers, matrices, parts or other supplies required for use on or in connection with said machine, its belongings and accessories, at prices not exceeding its published list prices, and the said lessees agree that they will, during the existence of this agreement, purchase said spacers, matrices, parts or other supplies required for use on or in connection with said machine, its belongings and accessories, from the lessor or its agents, only.

"Sixteenth:—The lessor is authorized to enter in this lease the factory number of the machine named herein after said lease has been executed.

"In Testimony Whereof, this agreement has been executed by the parties hereto.

"MERGENTHALER LINOTYPE COMPANY,

"By NORMAN DODGE, Second Vice-President.

"Attest: (Seal)

"J. W. HEARD, Assistant Secretary.

"W. B. HAYS,    (Seal)
"SAMUEL W. DAVIS, (Seal.)"

## OPINION.

FARRINGTON, J.—The law is well settled that the failure of a foreign corporation doing business in this State to comply with the law with reference to obtaining a license, etc., as provided in the sections hereinbefore enumerated is a matter of defense which must be affirmatively alleged by the party relying on it. United Shoe Machinery Co. v. Ramlose, 210 Mo. l. c. 645, 109 S. W. 567; Groneweg & Schmoentgen Co. v. Estes, 139 Mo. App. 36, 119 S. W. 513; and there are numerous other decisions in Missouri to the same effect.

This judgment must be reversed and the cause remanded, first, for the reason that the court directed a verdict on the pleadings. Nowhere in the pleadings is there any allegations that the plaintiff was doing business in Missouri contrary to any law in this State. An examination of the answer discloses that while it alleges that plaintiff has not complied with the foreign corporation law, there can nowhere be found any fact pleaded charging it with doing business in Missouri such as is contrary to law,—that is, an intrastate business. Besides, the reply positively negatives the theory that such condition existed. "Doing business in the State" is an essential averment to raise the issue sought to be invoked here. [Groneweg & Schmoentgen Co. v. Estes, supra; Ellis Lumber Co. v. Johns, 152 Mo. App. 517, 133 S. W. 633.] However, as the case must be retried, we will consider it as though such defense were property raised in the pleadings.

In this case there was at most but one transaction. The contract under which the machine was delivered was to continue for six years if it remained a lease, and the rent was to be paid annually. The different periods of payment and the continued use of the machine by the lessees under the lease for the term made the transaction as to the making of the lease but

one piece of business. The sale and delivery of a horse for one hundred dollars cash in hand is one transaction. If the payment is to be in installments, and the horse is to be worked in ten different wagons by the purchaser this would not make the sale and delivery of the horse more than one transaction. So far as the pleadings in our case show, this was the only business the plaintiff did or ever expected to do in Missouri. As to isolated transactions, we quote from 19 Cyc. 1268: "The general conclusion of the courts is that isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one State and citizens of another State, are not a doing or carrying on of business by the foreign corporation within the latter State, even according to the weight of authority, where the transaction is of such a character as to constitute a part of the ordinary business of the corporation." Under this is a note in which scores of cases from many States are cited, among which is Missouri. [See, also, the numerous cases cited in support of this rule in 10 L. R. A. (N. S.) 693 note, and 22 Am. & Eng. Anno. Cases, 553 note; First National Bank v. Leeper, 121 Mo. App. 688, 97 S. W. 636; Meddis v. Kenney, 176 Mo. 200, 75 S. W. 633; Painter v. Colorado Springs & Cripple Creek Dist. Ry. Co., 127 Mo. App. 248, 104 S. W. 1139; St. Louis Wire-Mill Co. v. Consolidated Barb-Wire Co., 32 Fed. 802; Penn Collieries Co. v. McKeever (N. Y.), 75 N. E. 935, 2 L. R. A. (N. S.) 127.] This principle is analogous to the rule well known that a sale of one drink of spirituous liquor does not constitute one a liquor dealer. The Alabama cases cited by respondents are of no aid here as the statute in that State prohibits *any* business. For this further reason, therefore, the judgment in this case, being contrary to the overwhelming weight of authority, is erroneous.

In the case under consideration, the business done was under the contract or lease. The machine was de-

livered to the defendants f. o. b. New York City. The
defendants were induced to enter into the lease by a
traveling salesman representing the plaintiff who had
no alleged place of business in Missouri. The contract
was accepted in New York. The furnishing of a com-
petent machinist to erect the machine in Missouri and
to instruct the employees of the lessees how to operate
it was merely an incidental inducement to the making
of the contract. Such machinist when so employed
according to the very terms of the lease would be at
the time he was engaged at his work in Missouri an
employee of the defendants as they were to bear all
his expenses while so engaged. The agreement to pur-
chase supplies from the lessor in New York would be
a contract clearly interstate, and if from the agent of
the lessor would be of the same character provided
such agent did not furnish them from some place of
business or office kept for such purpose in this State.
The paying of taxes and premiums on insurance poli-
cies by the lessors could not be construed as an act
of the plaintiff in carrying on business in this State.
Many foreign corporations must pay taxes in Missouri
on their property located here and still they may not
be violating any statutes relative to doing business.
The power to tax retained by the States is entirely
different from the power to deal with commerce be-
tween citizens of the different States.

The question as to what constitutes an interstate
transaction, and that relating to the lack of power in
the State to impose burdens upon or fetter such com-
merce, have been so thoroughly discussed already that
we shall merely cite some of the cases that are con-
trolling which we think clearly hold that the transac-
tion we have under consideration upon the pleadings
was interstate business and therefore not to be fettered
by the local State laws. [See: Butler Bros. Shoe Co.
v. United State Rubber Co., 156 Fed. 1; International
Text-Book Co. v. Pigg, 217 U. S. 91, 54 L. Ed. 678, 27

L. R. A. (N. S.) 493; Buck Stove & Range Co. v. Vickers, 226 U. S. 204, 57 L. Ed. 189; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 28 L. Ed. 1137, 1139; Robbins v. Taxing District of Shelby County, 120 U. S. 489, 30 L. Ed. 694; Philadelphia & Southern Mail Steamship Co. v. Commonwealth of Pennsylvania, 122 U. S. 326, 30 L. Ed. 1200; Crutcher v. Commonwealth of Kentucky, 141 U. S. 47, 35 L. Ed. 649; Lyng v. People of the State of Michigan, 135 U. S. 161, 34 L. Ed. 150; State ex rel. v. Pacific Mut. L. Ins. Co. v. Grimm, 239 Mo. l. c. 182, 143 S. W. 483; International Text-Book Co. v. Killespie, 229 Mo. 397, 129 S. W. 922; Corn Products Mfg. Co. v. Western Candy & Bakers Supply Co., 156 Mo. App. l. c. 116, 135 S. W. 985; Koenig v. Boat Mfg. Co., 155 Mo. App. 685, 135 S. W. 514; Simpson v. Shepard, 230 U. S. 352, 57 L. Ed. 1511; Lehigh Portland Cement Co. v. McLean (Ill.), 92 N. E. 248; Chicago Crayon Co. v. Rogers (Okla.), 119 Pac. 630; Vulcan Steam Shovel Co. v. Flanders, 205 Fed. 102.] In the case last cited it is said: "The lease between Jones and the plaintiff and the bringing of the shovel into this State was interstate commerce. The court is satisfied that this sale to the defendant stands on no different basis that it would if the original shipment to Jones had been on a contract for sale which for some reason had been forfeited, instead of on a contract for lease" referring to some of the cases hereinbefore cited.

We see no distinction between a contract of lease, a contract of factorage, and a contract of sale, so far as the transaction under which the articles are dealt with is to be classified as interstate or intrastate. The mere ownership of personal property by a foreign corporation is not prohibited under the Missouri law. It is a doing of business in Missouri with that property that the statutes are designed to reach. As to such property standing idle the foreign corporation would be required to pay taxes, would be permitted to

Linotype Co. v. Hays.

protect it by insurance, and would be permitted to commence an action for the recovery of possession of the same provided it was denied possession by wrongful act of another. [See United Shoe Machinery Co. v. Ramlose, 231 Mo. 508, 132 S. W. 1133.]

The case of United Shoe Machinery Co. v. Ramlose, 210 Mo. 631, 109 S. W. 567, is clearly distinguishable from the case at bar. The plaintiff in that case maintained a place of business in St. Louis, Mo., kept its stock, property and assets there, employed an agent to look after its business in Missouri, and employed its machines by lease in manufacturing for which it was to collect a royalty on every pair of shoes manufactured. It was organized to carry on that business under the laws of Massachusetts, and was actually prosecuting such business in Missouri by its agent and office and place of business in this State. No such condition prevailed in our case according to the allegations of the pleadings. The same distinction prevails in Diamond Glue Co. v. United States Glue Co., 187 U. S. 611, 47 L. Ed. 328; Amalgamated Zinc and Lead Co. v. Bay State Zinc Min. Co., 221 Mo. 7, 120 S. W. 31; Fay Fruit Co. v. McKinney Bros. & Co., 103 Mo. App. 304, 77 S. W. 160; and other cases cited by respondent.

As we view the business done between the parties to this lease, it was purely an interstate transaction in its character and therefore not subject to the control of the sections of the Missouri statutes in question, and therefore plaintiff should not have been denied the right to maintain its action in our courts.

The judgment is reversed and the cause remanded. *Robertson, P. J.,* and *Sturgis, J.,* concur.